MILJAK, APPELLEE, *v.* BOYLE, APPELLANT.

(No. 4301—Decided October 8, 1952.)

*Messrs. Myers, Myers & Myers,* for appellee.
*Messrs. Smoyer & Smoyer,* for appellant.

DOYLE, J. Violet Miljak, by Olga Miljak, her guardian and next friend, brought suit in the Court of Common Pleas of Summit County against Eugene Boyle for damages for personal injuries sustained while she was riding as an invited guest in an automobile driven by the defendant, Boyle. She alleged wanton misconduct of the driver, Boyle, as the proximate cause of her injuries, the proof of which was necessary for recovery under the so-called "guest" statute of this state. Section 6308-6, General Code.

Upon the issues joined by the answers, and the evidence presented, the jury returned a general verdict for the injured girl. Judgment was thereupon entered for her following the overruling of motions by the defendant for judgment notwithstanding the general verdict, and upon the answers by the jury to the special interrogatories. A motion for a new trial, later filed by the defendant, was also overruled.

An appeal to this court from the judgment above noted presents for decision claimed error in the following respects:

"1. * * * in overruling the motions of the defendant for a directed verdict made at the conclusion of plaintiff's case in chief, and at the conclusion of all the evidence;

"2. * * * in overruling the motion of defendant for judgment upon the special findings returned by the jury in answers made * * * to * * * interrogatories * * * and in entering judgment against defendant upon the general verdict;

"3. * * * in overruling the motion of defendant for judgment notwithstanding the general verdict * * *;

"4. * * * in overruling the motion of defendant for a new trial."

The petition alleged the following facts in pleading wanton misconduct:

"* * * defendant had driven within the city of Akron, Ohio, south on High street and turned east on Waterloo road at an excessive rate of speed as high as seventy (70) miles per hour; that all during said time plaintiff and others in the car remonstrated with defendant to slow down, at which defendant became angry, and, when the light at South Arlington street turned green, he started off, setting his automobile at once up to a speed of seventy (70) miles per hour; that plaintiff screamed to defendant to slow down, but he kept on at this high speed, and as he came to the first curve after South Arlington street intersection, he hit the concrete divider in the center of the highway, thereby spinning his vehicle out of control and causing it to slam violently into the north ditch and embankment of * * * route 224, throwing plaintiff violently about against the interior of said vehicle. Plaintiff further says that defendant knew that the speed of seventy (70) miles per hour at which he was operating his vehicle on Waterloo road, which was heavily traveled, winding, and surrounded by businesses and homes, was an unusually dangerous speed at which to operate his vehicle; and defendant also knew that the manner in which he was operating his vehicle would

in all probability result in injury to those riding in said vehicle, including this plaintiff; but that in his anger defendant was heedless of the danger to which his driving subjected this plaintiff.''

1. Attention will first be directed to error claimed to exist through the action of the court in overruling the motion of the defendant to enter judgment on his behalf ''upon the special findings returned by the jury.''

The interrogatories, which were properly submitted at the instance of the defendant (*Davison* v. *Flowers,* 123 Ohio St., 89, 174 N. E., 137), and the answers thereto, are in the following terms:

''Interrogatory No. I. Q. Does the jury find by a preponderance of evidence that the defendant at or immediately prior to the accident, was guilty of wanton misconduct?

''A. Yes.''

''Interrogatory No. II. Q. If the answer of the jury to question No. I was 'yes,' then state of what acts and omissions of the defendant such wanton misconduct consisted.

''A. Such wanton misconduct consisted of a peevish disregard of request by other occupants of car to exercise more caution, thus constituting a disposition to perversity.''

It appears in the record that after the case was submitted and the jury had commenced its deliberations, the following request was made to the trial judge: ''The jury would like to have a written statement of the court's definition of 'disposition to perversity.' * * * William H. Doolan, jury foreman.'' The court thereupon prepared and submitted in writing the following answer:

''The word 'disposition' as used is used in the sense of mental state, mental inclination or tendency. By

'perversity' is meant  the quality of being perverse, that is, stubborn, obstinate, cantankerous, contrary, not disposed to be set right, wilfully erring, peevish.

"Taken together the expression 'disposition to perversity' is such a disposition or mental state as is manifested or shown by a person, who when notwithstanding his or her conscious and timely knowledge of an approach to an unusual danger, and of common probability of injury to others, proceeds into the presence of the danger with indifference to consequences and with absence of all care."

It thus appears that the jury had before it in writing not only the above definition of "disposition to perversity," coupled with an illustration of how it may be "manifested or shown," but also the following written charge (given before argument) setting forth the necessary elements of wanton misconduct:

"In order to warrant a finding that the acts of the defendant constituted wanton misconduct, your inquiry must be directed to a determination of the mental state of the driver at the time of the accident; there must be substanital evidence supporting the conclusion that his mental state constituted a disposition to perversity; neither speed, absence of ordinary care, bad judgment nor violation of safety statutes, alone, is sufficient; there must have been an absolute indifference to the consequences of his acts; and there must have been a reckless indifference to the interests of others.  Conscious and timely knowledge of approach to unusual danger with a known probability of injury to others, if coupled with indifference to such consequences and an absence of all care, is necessary to establish a case of wanton misconduct."

In appraising the above instructions, it appears that they come well within the pronounced definitions of the Supreme Court of this state in a number of

notable cases, some of which are: *Higbee Co.* v. *Jackson,* 101 Ohio St., 75, 128 N. E., 61, 14 A. L. R., 131; *Reserve Trucking Co.* v. *Fairchild,* 128 Ohio St., 519, 191 N. E., 745; *Universal Concrete Pipe Co.* v. *Bassett,* 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646; *Vecchio* v. *Vecchio,* 131 Ohio St., 59, 1 N. E. (2d), 624; *Morrow* v. *Hume, Admx.,* 131 Ohio St., 319, 3 N. E. (2d), 39; *Jenkins* v. *Sharp,* 140 Ohio St., 80, 42 N. E. (2d), 755; and *Masters* v. *New York Central Rd. Co.,* 147 Ohio St., 293, 70 N. E. (2d), 898 (certiorari denied, 331 U. S., 836, 91 L. Ed., 1848, 67 S. Ct., 1519). There is no error here.

Fortified with the above written instructions, the jury then proceeded to weigh the evidence in the light of the law thus given, and at the conclusion thereof reached a general verdict for the plaintiff, and answered the interrogatories as above indicated.

The statutory authority for the submission of interrogatories is Section 11420-17, General Code, and is as follows: "When either party requests it, the court shall instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon. The verdict and finding must be entered on the journal and filed with the clerk."

"The 'particular questions of fact' contemplated by the statute are such that the answers to them will establish ultimate and determinative facts, and not those which are only of a probative character; such facts as will enable the court in the application of the law, to determine the rights of the parties, and not those which simply tend to prove them." *Schweinfurth, Admr.,* v. *C., C., C. & St. L. Ry. Co.,* 60 Ohio St., 215, at p. 232, 54 N. E., 89.

This rule was later construed to *not* exclude questions, the answers to which would establish probative

facts, from which an ultimate material fact might be inferred as a matter of law. *Gale* v. *Priddy,* 66 Ohio St., 400, 64 N. E., 437.

The code of procedure then follows with Section 11420-18, General Code: "When a special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly."

Through a long line of cases the Supreme Court has labored these statutes and has reached some interesting, if not astounding, conclusions, as to the propriety of certain questions, and the effect of various answers to interrogatories upon the general verdicts under consideration. Some of the cases are noted and discussed in an article contained in 23 Ohio Bar, 421. Among the cases therein noted may be found the recent case of *Masters* v. *New York Central Rd. Co.,* 147 Ohio St., 293, heretofore cited in this opinion for the purpose of showing the various necessary elements for the proof of wanton misconduct. The case will now be used as authority, in our determination of the effect of the answers to the interrogatories here under consideration, upon the general verdict. The second paragraph of the syllabus of that case is as follows:

"2. An interrogatory requiring the jury in a personal injury action, in the event the jury finds the defendant guilty of negligence, to specify the act or acts of negligence is a proper inquiry; and the failure or inability of the jury to find the existence of a claimed act of negligence, in answer to interrogatories so submitted, is equivalent to a finding on such claim of negligence against the party having the burden to establish it."

This syllabus has reference to the answers of a jury to the following interrogatories: "Was the defendant guilty of any negligence?" and "If so, what was the

negligent act or acts of the defendant?'' The answer of the jury to the latter interrogatory ''found the defendant guilty of only two of the acts of negligence which were comprehended in the first three of the ten specifications of negligent acts charged in the petition.'' Under these circumstances the case is authority for the rule set forth above, that a failure to find on some of the pleaded specifications of negligence is equivalent to a finding on such claim of negligence against the party having the burden of proof.

Further analyzing the case, there will be found in the petition several allegations charging wilful and wanton misconduct. There was no finding by the jury on any of these allegations, and, in treating this legal circumstance, the Supreme Court, speaking through Judge Hart, said: ''Furthermore, by failing to specify in answer to the interrogatories, as negligent acts of which defendant was guilty, the grounds of negligence charged in specifications 7, 8, 9 and 10 of the petition, the jury effectively found against the plaintiff on the issue of willful and wanton misconduct.''

It thus appears to be the law of this state that, where several specifications of negligence are made in a petition, and a jury, in an answer to an interrogatory directing it to specify the act or acts of negligence found by it to exist, fails to include a finding on some of the pleaded specifications, such failure or inability constitutes a finding, on those specifications, against the party having the burden of proof—*i. e.*, the plaintiff. It also appears to be the rule that, where various charges of wrongful conduct are pleaded which are sufficient, if proved, to constitute wanton misconduct, a failure to find operative facts alleged in the pleadings essential to constitute the charge of wanton misconduct, is a finding against the plaintiff on those essential elements.

In the case of *Johnson* v. *Gernon, Jr.,* 91 Ohio App., 529, 107 N. E. (2d), 377, Judge Stevens speaking for this court wrote: ''5. An interrogatory in a personal injury action requiring the jury, in the event it finds the defendant guilty of wanton misconduct, to state what acts or omissions of defendant constituted such misconduct is a proper inquiry; and, in answering such interrogatory, the failure or inability of the jury to find the existence of conscious knowledge by defendant of an approach to an unusual danger, absence of all care on his part, and an indifference to consequences, is equivalent to a finding against the party having the burden of establishing wanton misconduct.''

We determine in the case here for decision that the jury's answer that ''Such wanton misconduct consisted of a peevish disregard of request by other occupants of car to exercise more caution, thus constituting a disposition to perversity,'' was a finding on but one of the several essential elements of the offense of wanton misconduct, and that the failure or inability to find on other pleaded essential elements in the light of the court's charge (special request to charge reduced to writing and given to the jury) ''is equivalent to a finding'' against the plaintiff, upon whom the burden of proof rested. It is not the law that a ''disposition to perversity'' alone may constitute wanton misconduct.

It was charged, among other things, as heretofore stated, that the defendant drove his automobile at a speed of 70 miles an hour, and that he knew that, at this rate of speed over a heavily-traveled, winding and built-up section of the country, his activities would in all probability result in injury to those riding with him.

It must be observed that there was no finding on speed, nor of a dangerous situation existing at the

time and place; and while wantonness can never be predicated upon speed alone, yet, when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without care, and without slackening his speed, in utter heedlessness of the other's jeopardy, speed plus such unusually dangerous surroundings and a knowing disregard of another's safety may amount to wanton misconduct. *Morrow* v. *Hume, Admx., supra*; *Jenkins* v. *Sharp, supra*.

Just as speed alone is not sufficient to constitute wanton misconduct, neither, as heretofore stated, is a disposition to perversity alone sufficient. The necessary factual circumstances (speed plus concomitant facts showing ''unusually dangerous surroundings and a knowing disregard of another's safety''), although pleaded and charged by the court, are entirely lacking in the answer to the interrogatory. To this situation, we must now apply the rules stated above.

It is the conclusion of this court that in giving effect to the rules of law pertaining to that which the jury specifically found, and that which the jury failed or were unable to find, the special finding of facts is inconsistent with the general verdict. Under such circumstances, Section 11420-18, General Code, requires this court to ''give judgment accordingly.''

The judgment therefore will be reversed, and final judgment entered for the defendant.

*Judgment reversed.*

HUNSICKER, P. J., and STEVENS, J., concur.