THE STATE OF OHIO, APPELLEE, *v.* WARD, APPELLANT.*

*Motion for leave to appeal overruled, December 18, 1957.

(No. 444—Decided May 10, 1957.)

*Mr. Paul N. McKinley,* for appellee.
*Mr. John Roof,* for appellant.

GUERNSEY, J. This is an appeal upon questions of law from a judgment of the Common Pleas Court of Hardin County.

The defendant, Thelma Ward, was tried before a jury in said county on two counts of an indictment, the first count being for the unlawful and unintentional killing of Jason Carey while operating a motor vehicle at an excessive and unlawful speed, and the second count being for the unlawful and unintentional killing of Jason Carey while operating a motor vehicle "without due regard, with respect to maintaining a lookout ahead, for the safety and rights of pedestrians and so as to endanger the life and limb of any person in the lawful use of said highway; in particular, Jason Carey aforesaid."

Upon such trial, the jury found the defendant guilty on both counts as charged, and defendant was duly sentenced according to law. It is from the judgment of sentence that this appeal is taken.

The defendant, appellant herein, assigns error in the following particulars:

1. Error was committed during and in the *voir dire* examination of the jury conducted by the prosecuting attorney, prejudicial to this defendant-appellant and exception having been taken thereto.

2. Erroneous comments of the court made in connection with said *voir dire* examination prejudicial to defendant-appellant.

3. The verdict of the jury is not sustained by the required quantum of proof, or by the weight of the evidence, or by sufficient evidence.

4. The court erred in its charge to the jury, to which defendant-appellant excepted.

5. Other errors of law prejudicial to the defendant-appellant, apparent upon the face of the record.

The defendant contends under the first of the assignments that it was error for the prosecuting attorney to read Sections 4511.18 and 4511.20 of the Revised Code to the jurors on their *voir dire* examination, and then interrogate them as to whether they had any "disagreement or opposition with the legislative intent on the enactment of" those sections.

The scope and extent of *voir dire* examination in criminal cases was generally established by the Supreme Court of Ohio in the case of *State* v. *Ellis*, 98 Ohio St., 21, 120 N. E., 218, wherein the court says at page 28:

"The oath of the juror is to 'well and truly try and true deliverance make between the state of Ohio and the prisoner at the bar.' All of above grounds [of challenge for cause], severally and collectively, are primarily designed to secure for the state, no less than the prisoner at the bar, a fair and impartial jury."

"What is the jury to try? Manifestly the issues raised by the indictment; that is, the guilt of the prisoner as therein charged. The entire *voir dire* examination should be directed exclusively to the question whether from any cause the juror has a bias of mind in favor of or against either party that would interfere with his impartial and full consideration between them as to the guilt of the accused as charged."

In paragraph one of the syllabus of the *Ellis case* it is held:

"1. In a *voir dire* examination of veniremen to qualify them as fair and impartial jurors under the Constitution and the law, such examination, where not specifically controlled by statute, is largely in the discretion of the trial judge, and no prejudicial error can be assigned in connection with such examination unless there be a clear abuse of such discretion."

In the case of *Vega, Admr.*, v. *Evans*, 128 Ohio St., 535, 191 N. E., 757, 95 A. L. R., 381, the Supreme Court held in the first two paragraphs of the syllabus:

"1. The purpose of the examination of a prospective juror upon his *voir dire* is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant. * * *.

"2. The scope of the inquiry will not be confined strictly to the subjects which constitute grounds for the sustaining of a challenge for cause; but if it extends beyond such subjects it must be conducted in good faith with the object of obtaining a fair and impartial jury and must not go so far beyond the parties and the issues directly involved that it is likely to create a bias, a prejudice, or an unfair attitude toward any litigant. * * *."

To the knowledge of this court there are no decided cases in Ohio on the specific question of the propriety of the examination on *voir dire* of prospective jurors as to their "disagreement or opposition with the legislative intent" of specific statutes. However, there are some cases in other jurisdictions indicating the borderline character of this type of examination. The Supreme Court of Missouri stated in the case of *State* v. *Mosier,* 102 S. W. (2d), 620, at 624, a case which the court reversed on other grounds, that:

"* * * it was improper for the assistant circuit attorney to ask the members of the panel whether they thought the habitual criminal statutes were 'good law' or 'a fair law.' Their opinions on the merits of the law were immaterial unless so unyielding as to preclude them from following the law under the court's instructions. That should have been the question asked."

The Supreme Court of Minnesota in the case of *State* v. *Bauer,* 189 Minn., 280, 281, 249 N. W., 40, summarized its viewpoint in a similar situation, as follows:

"* * * We may also assume they have the right to ascertain the mental competency of the jurors and to acquire sufficient knowledge of them so as to exercise intelligently the peremptories the statutes give. But jurors are not to undergo a course of instructions on the law at the hands of the attorneys, or to pass an examination therein, or to disclose in advance of the evidence how they will decide the case. * * *"

"* * * The learned trial court thus aptly characterized the procedure counsel sought to establish:

" 'Apart from the authorities above cited, if defendant has

a legal right to examine, as a matter of law, prospective jurors, first instructing them as to the law and then exacting a promise to apply such law favorable to the defendant, then there is no limit to which he may not go. He may explain and exact a promise in reference to the law of circumstantial evidence, confessions, corroborating testimony, accomplices, credibility of witnesses, and numerous other matters which he thinks are favorable to his case. If he has this right the state has likewise the same right to inquire in reference to the law favorable to the state. * * *,''

Under the statutes of Ohio, agreement or disagreement with the Legislature as to its intent in enacting a statute or as to the desirability or undesirability of any particular law is not a specific ground of challenge of a juror for cause. Permitting such questions to be asked and to be answered would not in itself be conclusive of any bias or prejudice for or against the state or the defendant. However, a careful examination of the bill of exceptions in this cause reveals that every juror examined in such manner and thereafter sworn had answered that he or she did not have any disagreement or opposition to the ''legislative intent.'' We also note that although the court permitted the examination to proceed in this manner he repeatedly cautioned the jurors to the effect that the ''point is, does anybody have an opinion to the section upon which the indictment is predicated that would preclude you from impartial consideration of this case,'' and that ''the court will define the section to you fully at the appropriate time.''

In this state of the record, the *voir dire* examination being largely in the discretion of the trial judge, and there being no clear abuse of such discretion apparent, there was no error prejudicial to the defendant, as assigned in the first assignment of error hereinbefore quoted. *State* v. *Ellis, supra* (98 Ohio St., 21).

Under the second assignment of error defendant contends that the court erred in repeatedly interrupting the examination of the prospective jurors on the *voir dire* and asking questions and making comments to the prejudice of the defendant. Counsel for appellant has pointed out in his brief, as examples of such interruptions, practically every comment made or question

asked by the trial court during the *voir dire,* including those relating to the first assignment of error hereinbefore disposed of. An examination of the bill of exceptions reveals that to most of said comments and questions the defendant made no objection at the time of trial, and, not having objected at the time, he waived any error thereby pertaining.

Many other of the comments and questions of the court during the *voir dire* were directed to eliciting from the prospective jurors further information as to their respective qualifications, confined primarily to those occasions when a juror testified, either when being examined by the state or by the defendant, that the juror had formed an opinion about the case. In respect to such comments and questions it is to be noted that the primary duty of examination falls upon the trial court by the provisions of Section 2945.27 of the Revised Code, and the pertinent provisions of Section 2945.25 of the Revised Code, as hereinafter quoted:

Section 2945.27. ''The judge of the trial court shall examine the prospective jurors as to their qualifications to serve as fair and impartial jurors, but he shall permit reasonable examination of such jurors by the prosecuting attorney and by the defendant or his counsel.''

Section 2945.25. ''A person called as a juror on an indictment may be challenged for the following causes:
''* * *

''(B) That he has formed or expressed an opinion as to the guilt or innocence of the accused; but if a juror has formed or expressed such an opinion, the court shall examine such juror on oath, as to the grounds thereof * * *.''

The balance of the comments and questions of the court on the *voir dire* complained of by defendant were either occasioned by objections raised by one side or the other, or were made or asked in the interests of proceeding on the *voir dire* examination in an orderly fashion and reasonably directing the conduct of the trial.

We find that the interruptions, comments and questions on the *voir dire* examination specifically complained of by defendant do not constitute error.

However, we note that on the examination of the thirteenth

juror the court asked the following question, which was thereupon objected to by the defendant:

"You understand the point; it is a question of whether you will apply the law as written by the Legislature and explained *by the state* to the facts adduced or whether you will apply what you think the law is or ought to be; you understand the point?" (Emphasis added.)

This question contained a clearly erroneous and probably inadvertent statement as to the duty of the prospective juror, but, since the juror to whom the question was directed was thereafter excused without sitting in judgment on the case and since all the jurors to whom the case was submitted were repeatedly thereafter informed that it was their duty to take and accept the law as given them by the court, we conclude that such error was not prejudicial to the defendant.

For the reasons stated, we find the defendant's second assignment of error is without merit.

Coming now to defendant's third assignment of error, we observe that defendant neither argues nor specifies in her brief any claimed errors coming within the scope of the assignment, and this court, in the exercise of its statutory prerogative, will not consider this assignment.

With reference to the fourth assignment of error, defendant contends (1) that the court erred in not charging the jury as to certain matters which the defendant now claims should have been charged; (2) that the court erred in its charge to the jury in using the words "maintaining a lookout ahead" with respect to the second count of the indictment, without explaining to the jury the meaning of such phrase; (3) that the court erred in its charge to the jury in that it charged to the effect that under the circumstances specified in its charge the defendant could be found guilty of second degree manslaughter under Section 4511.18 of the Revised Code, by failing to meet her common-law obligation of due care, whereas that section requires "that before defendant can be found guilty of manslaughter she must be found to have violated a law of the state of Ohio applying to the use or regulation of traffic"; and (4) that the court erred in "incorrectly, erroneously, and prejudicially" instructing the jury after they had started deliberations and asked for further instructions.

As to the first of these contentions dealing with the court's omitting to charge as to the matters which defendant claims now should have been charged, without deciding whether or not said matters could have been properly charged, we observe that when counsel was requested at the end of the charge as to whether they desired any further charges they made no response and thereafter made only a general exception to the charge of the court as given; and the failure of the court to so charge, if error at all, constituted an error of omission and not of commission, falling clearly within the rule laid down by the Supreme Court of Ohio in the first paragraph of the syllabus of the case of *State* v. *Tudor,* 154 Ohio St., 249, 95 N. E. (2d), 385:

"1. Where a trial court gives an instruction in answer to an inquiry of the jury which instruction is incomplete but correct as far as it goes, counsel has the duty to request the trial court to charge further so as to eliminate any possible confusion of the jury which may result from the incompleteness of such instruction. Any failure to charge further, if it is error, is an error of omission and not of commission. Unless counsel has requested the court to supply the omission, such error will not ordinarily justify reversal even in a criminal case."

We have carefully examined the court's charge and do not find there to be any incompleteness sufficiently extensive as to constitute error and justify reversal in this case.

With reference to defendant's second contention concerning the court's charge, we note that the second count of the indictment specifies that "Thelma Ward then and there operated her said motor vehicle * * * at a speed of sixty (60) miles per hour, within the residential district of the municipality of Kenton, Hardin County, Ohio, without due regard, *in respect to maintaining a lookout ahead.*" (Emphasis added.) In other words, the lack of regard attributed to the defendant was in maintaining a lookout ahead. In this count it is not charged that the defendant lacked regard in operating at a speed of sixty miles per hour, but that at such speed she lacked regard in respect to maintaining a lookout ahead.

The Supreme Court, in the case of *State* v. *Martin,* 164 Ohio St., 54, 128 N. E. (2d), 7, held in paragraph one of the syllabus that:

"1. Section 4511.20, Revised Code, providing that 'no person shall operate a vehicle * * * without due regard for the safety and rights of pedestrians * * * so as to endanger the life * * * of any person while in the lawful use of the * * * highways,' is a law applying to the 'use or regulation of traffic,' within the purview of Section 4511.18, Revised Code, and the phrase, 'without due regard,' as used in Section 4511.20, Revised Code, means that a person must operate such vehicle in the same manner as would a reasonably prudent person under similar circumstances."

It is an obligation of a driver of an automobile to watch everything and everybody, not only in front of him but on the sides and in the rear of him so far as possible. See, *Scott, Admr.*, v. *Marshall*, 90 Ohio App., 347, 105 N. E. (2d), 281 (dismissed for want of debatable constitutional question, 156 Ohio St., 270, 101 N. E. [2d], 906); and, also, 6 Ohio Jurisprudence (2d), 429, Section 211.

Since the maintaining of a lookout was the lack of due regard specified in the indictment, and since it was a jury question as to whether the defendant operated her vehicle by maintaining a lookout in the same manner as would a reasonably prudent person under similar circumstances, it was proper for the court to use the term "maintaining a lookout ahead" in the manner in which it did in its charge to the jury, and its failure to define same, if any, was an error of omission, if error at all, coming within the rule of *State* v. *Tudor, supra* (154 Ohio St., 249), and did not constitute an error prejudicial to the defendant.

The paragraph of the court's charge complained of by the defendant in her third contention reads as follows:

"Hence you are instructed, that if defendant was then and there proceeding in a lawful manner, she had the absolute right of way, subject only to the requirement of the third paragraph aforesaid of Section 4511.48, Revised Code, that she exercise due care to avoid colliding with decedent pedestrian; however, if you find from the evidence, beyond a reasonable doubt, that defendant was then and there violating the speed regulations of Section 4511.21, as charged by the state in the first count of the indictment, and/or that she was violating the due regard

regulation of Section 4511.20, so as to endanger decedent pedestrian, if in the lawful use of the road, as charged in the second count of the indictment, then she thereby lost her otherwise aforesaid right of way and both parties to the subsequent collision, in respect to right of way, are relegated to their respective common law obligation, of exercising ordinary care, under the circumstances then and there existing, for their own safety and the safety of one another. Ordinary care is that degree of care which persons of ordinary prudence and discretion exercise under the same or similar circumstances, except when applicable to decedent, because of his youth, it is that degree of care, which boys of his age and development, of ordinary prudence and discretion, exercise under the same or similar circumstances."

Since the evidence was undisputed that the decedent pedestrian attempted to cross the roadway within the municipal corporation at a place other than a crosswalk, the provisions of Section 4511.48 of the Revised Code gave defendant the right of way if defendant was operating lawfully on the roadway, subject, however, to her duty of exercising due care to avoid colliding with any pedestrian upon the roadway. But, if defendant was not operating lawfully on the roadway, either by violating the speed regulations of Section 4511.21 or by violating the due regard regulation of Section 4511.20, then defendant lost her preferred status as to right of way, and both defendant and the decedent pedestrian, as to right of way, thereupon had an equivalent obligation of exercising ordinary care.

On the facts of this case the court's instruction as to right of way, above quoted, was not only proper, but came clearly within the rule of the first paragraph of the syllabus of the case of *State* v. *Martin, supra* (164 Ohio St., 54).

After the jury had deliberated for two hours and ten minutes, it returned to the courtroom and through its foreman requested additional instructions as to speed limits.

Without specifying the manner in which the additional charge then given by the court was incorrect, erroneous and prejudicial, except to say that the jury was thereby confused, the defendant claims that the court erred in its additional charge. To say that the jury was thereby confused is a con-

clusion not borne out by the facts, for the jury accepted the additional instructions as given, counsel made no objection to them as given, the jury asked for no further instructions, and within approximately an hour thereafter arrived at its verdict. Moreover, we have minutely examined the additional charge as given by the court and have been unable to find any erroneous statements therein upon which error could be predicated. (See Section 2321.03, Revised Code.) We conclude that appellant's contention as to the additional charge is therefore without merit.

We come now to defendant's fifth assignment of error. Defendant specifies error as follows:

1. That the sections of the Ohio statutes pertaining to the case were unduly repeated during the entire course of the trial preventing defendant from having a fair trial.

2. That comments of the court made in the presence of the jury during the course of the trial were prejudicially erroneous.

As to the first of these items, we have partially disposed of same in our disposition of the first assignment of error, *supra*. All other references to the statutes were in the opening statements, the closing arguments, and the court's charge. Those references thereto in the opening statement and the closing arguments were neither excessive nor inappropriate as given. Those references thereto in the court's charge were of the minimum necessary for a proper charge. Defendant's contention in this respect is without merit.

During the trial of the cause, the chief of police of Kenton, Ohio, was asked by the prosecution to testify as to the distance necessary to bring a car traveling at a certain speed to a stop. He testified thereto by referring to a chart which he said was provided him by the Ohio Department of Highways. The chart to which he referred during his extensive testimony as to stopping distances was not offered in evidence, nor did he testify as to any qualifications of the given stopping distances which might have appeared on the chart. During the course of the examination of the chief of police, and before he had testified as to any specific stopping distances, the following colloquy (with emphasis added) occurred in the presence and hearing of the jury between the court and one of the counsel for defendant.

"By Mr. Lady: If it is going to be a chart, it is all right.

"By the Court: In other words, instead of chart, shall we phrase it as an experience schedule, or something like that?

"By Mr. Lady: Well, your Honor, my point in this is, he is perfectly qualified to read from the chart and state what it is;

"By the Court: This question of stopping distances doesn't involve arithmetical calculation; it involves an experience table; hand it to them and let them see it.

"By Mr. Lady: I would make this further objection, and state the reason; that stopping distance involves the particular situation, the weight of the car, the operator of the car, the weight of the operator, conditions of weather.

"By the Court: *Not all of those, but some of those, I don't think weight has anything to do with it.*

"By Mr. Lady: Therefore, we object to the reading, because if this witness is not qualified as an expert he cannot pass judgment on this car at that particular time.

"By the Court: Overruled.

"By Mr. Lady: Exceptions.

"By the Court: Go ahead."

(First question by prosecuting attorney):

"All right, now, Chief Sheldon, at 30 miles an hour from this chart, how many feet is a safe stop—does it take to make a safe stop from that chart?

"By Mr. Lady: We object—

"By the Court: Overruled.

"By Mr. Lady: —unless he explains what type of road surface is under consideration.

"By the prosecutor: I think he said what type.

"By the Court: Macadam road surface; Proceed.

"By Mr. Lady: I didn't hear the answer.

"By the Court: What kind of road are you—

"By the witness: The average macadam road.

"By Mr. Lady: I beg your pardon.

"By the witness: The average macadam road.

"By Mr. Lady: Concrete or macadam?

"By the. witness: I imagine macadam.

"By Mr. Lady: That is our question, not what he imagines, but what he is talking about.

"By the Court: Overruled. *Hard surface road.* Proceed.
"By Mr. Lady: Note our exceptions."

Defendant's claim of error is based on the two italicized statements of the court, and we will consider the second of these statements first.

The uncertain testimony of the witness was that the chart pertained to stopping distances on "the average macadam road." The words "macadam" and "macadamize" formerly had a well understood meaning in road construction of the compacting into a solid mass of a layer of small broken stone on a bed of larger stone, usually without any other binder. However, in more recent years, as binders of tar and asphalt have been used, the terms "tar macadam" and "asphalt macadam" (See Webster's New International Dictionary, Second Edition, Unabridged) have come into use with reference to macadam roads constructed with tar and asphalt binders. All the various methods of properly constructing a macadamized road result in a hard surfaced road, so the term "hard surface road" as used by the court was equivalent to the term "macadam road," and, in and of itself, was neither erroneous nor misleading to the jury.

On the other hand, there being no testimony by any witness that weight did or did not have anything to do with stopping distance, the court's comment that, "I don't think weight has anything to do with it," constituted more than a comment on the evidence then before the court, but consisted of testimony and evidence in itself. However, on the factual situation we have before us, we do not have to consider whether a court has the right to make remarks of such character if such remarks are a correct statement of undisputed fact.

It is an indisputable scientific fact that the stopping distance of an object moving in a horizontal plane is directly related to the momentum of the object at the moment when the stopping force is first applied. In Webster's New International Dictionary, *supra*, the word momentum is defined as follows:

"Quantity of motion. It is the property of a moving body which determines the length of time required to bring it to rest when under the action of a constant force or moment. *Linear*

*momentum* is momentum of translation and equals the product of the mass and the velocity of the center of mass. * * *''

In the same work, the following definition appears:

''Velocity is a vector quantity equal to speed in a particular direction and is always relative to a stated frame of reference.''

Also the following definition:

''Mass is commonly measured by weighing, that is, by comparing the pull of gravity on the body whose mass is to be determined with that on a standard of known mass, the ratio of the weights being equal to the ratio of the masses.''

*Ergo*, it is an indisputable scientific fact that the weight of a moving body has a direct bearing on the distance required to bring that body to a stop.

In the cause before us there was no evidence as to the weight of the vehicle or vehicles, on which the figures on the chart were based, nor was there evidence as to the weight of the defendant's vehicle. It is conceivable that the weights of those vehicles were entirely different, which in the absence of a change in other variable factors would result in a greater or lesser stopping distance at a given speed for defendant's vehicle than that given on the chart.

For the court to state, ''I don't think weight has anything to do with it,'' in the presence of the jury, was the statement of a false conclusion on the part of the court, a false conclusion which could become credible to the jury merely by reason of the court announcing it as his conclusion. Giving the statement this credibility, since there was evidence in the case as to the distance which it took to stop defendant's car, the jury could readily conclude on the basis of the chart figures testified to by the chief of police, that the defendant was traveling at a certain speed immediately prior to attempting to stop her car, without having considered any change in stopping distance or the speed derived therefrom which may have existed by reason of the difference of weight of defendant's vehicle from that vehicle, or vehicles, on which the chart was based. The court's statement as to weight was clearly erroneous and such error was prejudicial to the defendant.

Since the error related to the determination of speed and since speed was directly an element of the first count of the indictment and indirectly an element of the second count of the indictment, the prejudicial error thus pertained to both counts of the indictment and the judgment of the Common Pleas Court must be, and hereby is, reversed in its entirety, and the cause is hereby remanded to the Common Pleas Court for a new trial and further proceedings according to law.

*Judgment reversed.*

MIDDLETON, P. J., and YOUNGER, J., concur.