McCoy, Appellee, v. Gilbert, Appellant.*
Gilbert, Appellant, v. Silver et al., Appellee.*

*Motion to certify the record overruled, December 9, 1959.

454

(Nos. 265 and 266—Decided July 16, 1959.)

*Messrs. Jackman, Nichols & Grubbs* and *Mr. James B. Patterson*, for appellees.

*Messrs. Richmond & Richmond* and *Messrs. Basom, Minor & Wedemeyer*, for appellant.

*Per Curiam.* These two cases were tried together and are being appealed together on questions of law. In the first case, Frieda S. Gilbert, appellant herein, was defendant, and plaintiff, Roy McCoy, appellee herein, recovered a judgment against her in the sum of $10,308.39 as damages for personal injuries.

In the second case, Gilbert, appellant herein, was plaintiff, seeking to recover damages for personal injuries from Allen C. Silver, defendant, appellee herein, who cross-petitioned for damages to a farm tractor. The verdict and judgment were for defendant Silver, on both the petition and cross-petition, and the damages to the trailer were assessed at $700.

The evidence indicates that on January 4, 1956, about one o'clock, p. m., three motor vehicles were proceeding southeastwardly on state route No. 29, approximately half a mile northwest of the intersection of that highway with Ohio-U. S. route No. 40; that route No. 29 at such point was a two-lane, blacktop highway, with a broken white center line; that the road was straight and level; that the surface was dry; and that the weather was fair and cold.

The leading vehicle in the procession, a 28 Case farm tractor belonging to appellee, Allen C. Silver, was being driven by

appellee, Roy McCoy, an employee of Silver, at a speed of approximately 12 miles per hour. Next behind the farm tractor was a tractor and closed van trailer, the body measuring somewhere between 7½ and 8 feet in width, 11 feet, 3 inches in height, and with a combined overall length of 38 feet. This second vehicle was traveling at a speed, estimated by its driver, of approximately 45 miles per hour, which he says he later reduced to 40 miles per hour. The third vehicle was Gilbert's 1955 Fairlane Ford, with power brakes, power steering, good horn, good tires, etc., and being operated by Gilbert at a speed, she says, of approximately 43 miles per hour, at which speed she was overtaking the tractor-trailer.

The first two vehicles were traveling in the right-hand lane. Gilbert proceeded to pass to the left of the tractor-trailer at a speed variously estimated to be between 45 and 55 miles per hour. She testified that she accelerated to 50 miles per hour to pass the tractor-trailer.

She says that, being behind the tractor-trailer, she did not see the farm tractor until she arrived at the front of the cab of the tractor-trailer. There was at that time sufficient space between that vehicle and the farm tractor for Gilbert to have returned to the right-hand lane. But there was no oncoming traffic and she continued in the left-hand lane, endeavoring to pass the farm tractor also. She says that as she approached the farm tractor it "edged out a little to the center of the road. I slowed up and blew the horn and he went back to the right-hand side of the road."

At a point near a private lane leading left to the residence of Silver, on the northeast side of the highway, McCoy turned the tractor to his left across the center line of the highway and into the left-hand lane. He says he had not seen Gilbert's Ford. An ensuing collision between the farm tractor and the Ford gave rise to the several causes of action here involved.

The evidence is in conflict as to whether Gilbert sounded her horn, whether McCoy turned in his seat to look back before turning, whether he gave a hand signal, and, if so, whether it was at the proper time and place. There is considerable evidence as to distances between vehicles and other circumstances which will be considered as it becomes pertinent in our analysis of the case.

The jury returned a verdict for McCoy upon his petition, and against Gilbert, and assessed his damages "at the sum of ($10,308.39) ten thousand plus $308.39 medical bills." In the second case, it returned a verdict for Silver and against Gilbert upon her petition; and a verdict for Silver and against Gilbert upon Silver's cross-petition for damages to Silver's farm tractor in the sum of $700. The same ten jurors concurred in these several verdicts; the remaining two jurors did not concur in any of them.

There were three special interrogatories. The first two appear on a single sheet of paper, with space after the first sufficient only for an answer without signatures. These interrogatories read: "Interrogatory No. 1: Do you find that Frieda S. Gilbert was negligent?" "Interrogatory No. 2: If your answer to interrogatory No. 1 is Yes, of what did her negligence consist?" The answer, "Yes," is written after Interrogatory No. 1. In the space following interrogatory No. 2, all twelve jurors signed, stating that she was "driving too fast." (One of the two jurors not concurring in the general verdicts expressed it as "fast driving," and added, "failure to blow horn." Of the ten who concurred in the general verdicts, one added "failure to blow horn," and two others added "not keeping car under control."

Interrogatory No. 3 reads: "Do you find that Roy McCoy was negligent in any respect that was a direct cause of his injuries?" Only three of the ten concurring in the general verdicts signed this interrogatory, and all three said: "I don't know." The two who did not concur in the general verdicts signed this interrogatory and wrote opposite their names "failure to signal."

At the time the verdicts were received, appellant first made, and then withdrew, a motion to require the jury to answer interrogatory No. 3.

These verdicts and these answers to interrogatories signify that the jury found Gilbert guilty of "driving too fast" and not guilty of the other charges of negligence alleged against her (*Masters* v. *New York Central Rd. Co.*, 147 Ohio St., 293, 70 N. E. [2d], 898; *Mills* v. *City of Cleveland*, 97 Ohio App., 78, 117 N. E. [2d], 471; and see *Miljak* v. *Boyle*, 93 Ohio App., 169, 112

N. E. [2d], 340) and that it failed to find appellee McCoy guilty of any negligence.

Gilbert makes eight assignments of error.

In assignment No. 1 she contends it was error for the court to instruct the jury on the assured-clear-distance rule under Section 4511.21, Revised Code. Her argument is that that rule is inapplicable because the farm tractor did not come "into her line of travel within the assured clear distance ahead at a point sufficiently distant ahead of her to have made it possible, in the exercise of ordinary care, to bring her vehicle to a stop and avoid a collision." She cites the case of *McFadden, Admr.*, v. *Elmer C. Breuer Transportation Co.*, 156 Ohio St., 430, 103 N. E. (2d), 385.

Gilbert testified that she first saw the farm tractor at a distance of 300 feet ahead in the right-hand lane while she was in the left-hand lane, and testified further:

"A. * * * Still no on-coming traffic. I could see almost to Broad Street (Ohio-U. S. route 40) so I stayed in the left-hand lane to pass the tractor, too. When I got about half ways to the tractor, oh, 150 feet to the rear of the tractor, he edged out a little to the center of the road. I slowed up and blew the horn and he went back to the right-hand side of the road, so I stayed in the left-hand lane of traffic to go ahead and pass him. When I got, oh, I would say approximately 50 feet behind him he angled this way across the highway.

"Q. By this way, what do you mean? A. To the left, across the center line, over into my lane of traffic. * * *"

The driver of the tractor-trailer testified that the farm tractor was 75 to 100 yards ahead of him when he observed Gilbert's Ford going around his vehicle. Neither he nor Gilbert saw McCoy look backward for oncoming traffic and neither saw him give a signal of his intention to turn. McCoy says he did both, but that he did not see Gilbert's Ford prior to the collision.

In this situation we cannot say whether or not appellant violated the rule as to assured clear distance, or whether she came within an exception to that rule which she invokes.

The *McFadden* case just cited involved a heavy roll of steel which defendant had negligently permitted to fall from its truck into the highway at an undetermined time, so that no one could

say whether it fell within the assured clear distance ahead of plaintiff's decedent.

In the other case cited by appellant, *Walcott* v. *Fuller*, 83 Ohio App., 176, 81 N. E. (2d), 126, this court decided that the assured-clear-distance rule did not apply to a plaintiff ahead of whom a defendant, driving in the same direction, neither saw plaintiff nor looked back nor signalled, and suddenly changed the direction in which he was driving, turning to the left directly in the path of and in close proximity to plaintiff's automobile, affording plaintiff no opportunity to avoid a collision.

Gilbert's version of the facts here presents a similar situation. However, when McCoy's version is taken into account, the question of the applicability of the rule becomes more difficult.

But in any event the answers to the interrogatories, by omitting reference to any violation of the assured-clear-distance rule, served to exonerate Gilbert from violation of that rule. Hence no prejudice resulted from the giving of the charge, whether or not it was erroneous to give it.

Assignment No. 2 is an objection to the refusal of the court to charge on the manner in which a hand and arm signal should be given under the provisions of Section 4511.40, Revised Code. However, the issue in this connection was not whether McCoy gave the right kind of a signal, but whether he gave any signal at all. Hence the refusal so to charge was proper.

Assignment No. 3 is directed to the portion of the general charge pertaining to Section 4511.39, Revised Code, entitled "Turn signals." After quoting the pertinent portions of the section, the court continued:

"Now, ladies and gentlemen, as applied to this case, whether or not the signal to turn left was given by plaintiff McCoy, as he testified, for defendant to have the benefit of the statute she would have had to be in a position on the highway that she could or should have seen it before plaintiff in fact started to make his turn.

"The fact, if it is a fact that defendant Gilbert's view of the farm tractor, operated by plaintiff McCoy, was hidden until she was passing the freight tractor trailer, a distance of 300 feet as she testified would not reimpose an obligation on plain-

tiff McCoy to again ascertain if the turn could be made with reasonable safety and again giving a hand signal. Unless he knew or should have known another and different vehicle was approaching, rather than the freight tractor trailer which he had observed as he testified.''

It is complained first that this instruction *"placed upon the appellant, Gilbert, the burden* of showing that she was in such position that she could have seen, or ought to have seen, any signal by appellee, McCoy, and thus *removed the burden from appellee, McCoy,* to prove that he had 'exercised due care, etc.' ''

We do not believe Gilbert seriously contends that McCoy has the burden of proving himself free from negligence, as everyone is entitled to the presumption that he is free from negligence. Gilbert, having alleged that McCoy was guilty of negligence which proximately caused the collision, assumes the burden of proving not only that he was negligent but also that his negligence proximately caused the collision. As she herself testified, she was, during one interval, in a blind spot with reference to the farm tractor; the giving or not giving of a signal by McCoy at that time was wholly immaterial. The charge properly points this out.

A second criticism of this charge is that it implies that McCoy had in fact already given one signal while the tractor was invisible to Gilbert. We do not believe that such is the import of the language used. The court was dealing in a supposition and analyzing its legal effect; but he made it sufficiently clear, in our opinion, that it was merely a supposition, or possible situation, not necessarily established by the facts.

But even if the language of the charge had implied that McCoy gave a signal when it was invisible to Gilbert, such fact, as we have seen, was immaterial.

Assignment of error No. 4 contends that the court should not have charged that the jury might find that McCoy had suffered permanent injuries.

The record apparently does not contain the usual expressions of medical opinion on this subject. While such evidence is often helpful, it is not always required. In case of amputation, for example, permanency would be obvious.

Of course the question is one for the jury. The case of *Columbus Railway, Power & Light Co.* v. *Pickles*, 28 Ohio App., 183, 162 N. E., 614, cited by appellees, so declares and has frequently been cited to that effect. However, the principal question there under discussion was whether the damages awarded were excessive.

The opinion of this court in *Brush* v. *Eastern Motor Dispatch, Inc.*, 61 Ohio Law Abs., 219, 104 N. E. (2d), 700, is more nearly in point. The second headnote therein reads:

"Where no evidence has been presented as to the possible duration of pain and suffering occurring as a result of an injury, an instruction to the jury that they could consider future pain and suffering in assessing damages, is erroneous and prejudicial to the defendant."

As the opinion indicated, the jury there needed some expert opinion on the subject, because otherwise they would have been required to speculate as to how long in the future the plaintiff's suffering would continue.

McCoy alleged the following serious injuries: "A fracture of the left fibula, left foot, a twisting and turning of the lumbar region of his back, causing severe strain to the muscles, tendons and ligaments of the lumbar region which also fired up a pre-existing arthritic condition. . . cuts and bruises about his face and head." There was substantial evidence to support these allegations and to show continuing pain and disability up to the time of examination by medical witnesses.

Serious as these injuries and their persistent effects appear, no one can determine from the evidence that they are permanent. In these circumstances, the absence of medical opinion on the point renders the jury's consideration of permanent pain and suffering conjectural and the instruction erroneous.

Assignment No. 5 is directed to the court having taken judicial notice in his charge of the times and distances required to stop an automobile traveling at certain speeds, in the absence of evidence on the subject.

Certain calculations were made by the court, such as interpreting miles per hour in terms of feet per second. While this was unnecessary, it was not erroneous.

But when, upon the theory of judicial notice, he makes de-

ductions based upon average reaction time, braking distances, etc., he risks the challenge now made. The statements objected to are contained in the following portion of the charge:

"Likewise I do not again repeat the statutes quoted, viz. Sections 4511.21, 4511.27, 4511.29 and 4511.39 and the explanation of them, or definitions of prima facie fact and right of way or application of the statutes, but I incorporate all that again by reference.

"However, it is necessary for the jury in applying these statutes to have some additional explanation as it particularly applies to plaintiff Gilbert's evidence and the law applicable thereto.

"There is one matter of common knowledge and of which courts take judicial notice. It is, 'that an interval necessarily elapses before the impulse to apply automobile brakes can be made effective.' The reaction time is commonly regarded as ¾ of a second.

"It is a matter of scientific fact of which courts take judicial notice that a vehicle travelling 10 miles per hour will travel 14½ feet per second which the jury may take into account with respect to the distance in time travelled by the farm tractor.

"Likewise that an automobile at 50 m.p.h. will travel a distance of 55 feet in the ¾ of a second time before the brakes can be made effective.

"Likewise that an automobile at 50 miles per hour will travel a distance of 73.3 feet per second.

"Likewise that an automobile at 55 miles per hour will travel a distance of 81 feet per second.

"Likewise that an automobile at 60 miles per hour will travel a distance of 88 feet per second.

"Likewise it requires with brakes in excellent condition, a distance of 166 feet to stop at 50 miles an hour, a distance of 190 feet to stop at 55 miles an hour, a distance of 226 feet to stop at 60 miles an hour."

In justification of this charge appellee's brief cites 9 B Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.), 408, Section 6023, which contains a recital of facts of which various courts have taken judicial notice. While it indicates that some jurisdictions have taken such notice of some

facts similar to those charged here, it does not appear that such precision as is contained in this charge has been generally accepted, nor does it cite any Ohio case which has done so.

A chart of reaction time and stopping distances appears in volume 9 C, page 413, Section 6237, of the same work. The data contained in the charge here in question adheres very closely to the figures on this chart.

The text in Blashfield, introducing the chart, contains the following language:

"The chart accompanying this section affords *much useful information* on the subject of the distances required to stop an automobile while traveling at various rates of speed.

"Charts of stopping distances furnish useful *standards for comparison, though the special circumstances of each case must also be considered.*
"* * *

"Where a charge of negligence is based upon driving at a dangerous and excessive rate of speed, evidence is admissible to show the distances within which a car of the class to which the one in question belongs can be stopped at specified rates of speed. Such evidence is not competent to show the exact speed of the car, but to show whether or not *a car of the same character*, going at an authorized rate of speed, could be stopped within less space than was apparently required to stop the car in question.
"* * *

"The distance within which a vehicle was actually stopped after an accident is some evidence of the distance within which it could have stopped." (Emphasis ours.)

The text continues with a discussion of the propriety of opinion evidence on the subject by witnesses with sufficient experience.

Thus, it would appear that Blashfield's chart does not purport to supply information so irrefutable as to be the subject of judicial notice. It certainly does not qualify under the requirements for judicial notice upon which the parties here are agreed. 21 Ohio Jurisprudence (2d), 37 and 38, Evidence, Section 16.

We are referred also to 31 Corpus Juris Secundum, 674,

675 and 676, Section 81. The language there used is carefully limited:

"* * * judicial notice has been taken of *matters of common knowledge pertaining to* * * * starting and stopping cars * * *." (Emphasis ours.)

The only Ohio case cited is *Lynch, Admx.,* v. *Pennsylvania Rd. Co.,* 48 Ohio App., 295, 194 N. E., 31. The subject is not mentioned in the syllabus. In the opinion Judge Ross points out, on page 297, only the very obvious fact that:

"It is today a matter of common knowledge that the presence of oil, such as is usually placed upon streets, makes them extremely slippery. It is very difficult to bring vehicles to a stop. They will skid and slide very easily. * * *"

The only Ohio authority which appellees have been able to marshal in their briefs is referred to as follows: "* * * We find Judge Taft making reference to the feet per second computation in *Parton* v. *Weilnau, Admx.,* 169 Ohio St., 154."

Counsel's statement is accurate, and that is all that Judge Taft said on the subject.

With regard to judicial notice, "Care must be taken that the requisite notoriety exists and every reasonable doubt upon the subject should be resolved promptly in the negative." 21 Ohio Jurisprudence (2d), 38, Evidence, Section 18.

"For a matter properly to be a subject of judicial notice it must be 'known,' that is, well established and authoritatively settled. Matters of which a court will take judicial notice are necessarily uniform or fixed and do not depend upon uncertain testimony, for as soon as a matter becomes disputable, it ceases to fall under the head of common knowledge and so will not be judicially recognized." 21 Ohio Jurisprudence (2d), 40, Evidence, Section 20.

Certain variables must enter into the consideration of such charts of reaction time and stopping distances, as, for example, the weight of the vehicle. See *State* v. *Ward,* 105 Ohio App., 1, 150 N. E. (2d), 465.

And a court "cannot take judicial notice of space within which automobile traveling at certain speed can be stopped, where evidence shows contrary." S*preng* v. *Flaherty,* 40 Ohio App., 21, 177 N. E., 528.

The instruction here in question not only pertains to the claim of violation of the assured clear distance, of which Gilbert was exonerated by the jury, but it also bears a close relationship to the averment that she was proceeding at a speed which was greater than was reasonable and proper, of which charge she was found to be guilty.

There was no evidence whatever of Gilbert's individual reaction time and no specific evidence of the time and distance within which she should and could have stopped the 1955 Fairlane Ford which she was driving, except for the distance within which she actually stopped. The charge complained of, therefore, injects into the case facts not in evidence. Thus it was prejudicially erroneous.

Assignment No. 6 is directed to the overruling of Gilbert's motions for directed verdicts at the close of appellee's case and at the close of all of the evidence. The evidence was sufficient at both points to present questions of fact for the determination of the jury, and the motions were properly overruled.

Assignment No. 7 raises the question of the sufficiency of the evidence to support the verdicts. Our review of the record convinces us that this assignment is not well made, except as to the amount of hospital and medical expense proved, regarding which we have made a detailed analysis in our discussion of assignment No. 8.

It is also contended, under the present assignment, that the answers to the special interrogatories were inconsistent with the general verdicts. These have been set forth above and we do not find them inconsistent.

Assignment of error No. 8 is the usual catch-all covering "other errors apparent on the face of the record," but here it is unusual in that it raises several specific questions. We shall consider those not previously covered.

Gilbert contends that the court erroneously admitted evidence of hospital and medical bills incurred by appellee, McCoy, without testimony showing that the same were necessary and reasonable. Counsel cites the perplexing case of *DeTunno* v. *Shull*, 166 Ohio St., 365, 143 N. E. (2d), 301. But appellees point out that whereas objection was made to the admission of the evidence in that case, no such objection was made here. That

circumstance eliminates the necessity of our considering this question on appeal. 3 Ohio Jurisprudence (2d), 63, Appellate Review, Section 203.

However, we do not find evidence to support the amount of hospital and medical expense found by the jury, namely, $308.39. There is testimony that the hospital bill for a certain period was $182.60, and that Dr. Kubiac's bill was "probably around eighty or a hundred dollars"; but we find no further evidence on the subject. Were it not for the fact that the judgments must be reversed on other grounds, we should feel obliged to make some appropriate order for failure of the evidence to support the finding and judgment for this item.

It is complained that the court, in his general charge, commented upon the evidence. We have examined the portions of the charge complained of. They purport to be a review, or summary, of evidence, not an expression of opinion as to its truth or falsity. There is no complaint that the review was inaccurate.

Gilbert complains of the court's charge that she was negligent as a matter of law in not sounding her horn at a point which would have been effective. It is unnecessary that we pass upon this question, as the answers to the special interrogatories exculpate her from this charge. Therefore she was not prejudiced by any possible error in this connection.

The instruction upon the question of her sounding her horn contained a statement that she was also subject to the requirement of ordinary care. This is not erroneous because of being applied at this point to her alone. Such requirement of ordinary care was properly applied to appellees in other portions of the charge. The immediate subject in hand was her use or failure to use her horn. It was not improper to apply the rule of ordinary care in this connection alone at this point in the charge.

We do not find that the instructions were slanted or that they placed improper emphasis to the prejudice of Gilbert.

Gilbert objects to the use by appellee of the deposition of Barbara Thrush at the trial. This witness was the daughter of Gilbert who had taken her deposition prior to trial. Appellees did not cross-examine her upon the deposition.

At the taking of the deposition on November 25, 1958, it was stipulated that it "is to be used at the trial of the cases on Monday, December 1st, 1958, for the reason that she is unable to attend in open court."

The fact that one party took this deposition does not render it unavailable to the other. Section 2319.05, Revised Code, providing for the use of depositions, imposes no such limitation upon their use, and the cases have held and text writers have observed that their use is not thus limited. *Andrews* v. *Watson*, 12 C. D., 686; *Currier* v. *City of Toledo*, 11 Ohio App., 50; 1 Hanna, Ohio Trial Evidence, 513, Section 607; Hurd and Long, Ohio Trial Evidence, 380, Section 19.3 (i). Failure of a party to cross-examine the other's witness does not affect the availability of the deposition to such party. 17 Ohio Jurisprudence (2d), 308, Depositions, Section 67.

For error of the court prejudicial to Gilbert in charging with respect to reaction time and braking distances, and with respect to permanent injuries, the judgments are reversed and the causes remanded for further proceedings according to law.

*Judgments reversed.*

WISEMAN, P. J., CRAWFORD and KERNS, JJ., concur.

(Decided August 1, 1959.)

ON REHEARING.

*Per Curiam.* Gilbert's application for rehearing is addressed primarily to the overruling of her third assignment of error. That assignment challenged the charge of the court upon McCoy's duties in making a left turn.

It is claimed that our opinion is at variance with the statutes, particularly with Section 4511.39, Revised Code, which, in pertinent part, reads as follows:

"No person shall turn a vehicle * * * from a direct course upon a highway until such person has exercised due care to ascertain that the movement can be made with reasonable safety to other users of the highway, and then only * * * after giving an

appropriate signal in the event any traffic may be affected by such movement.

"A signal of intention to turn right or left shall be given in sufficient time in advance of the movement indicated to give ample warning to other users of the highway who would be affected by such movement."

The portion of the charge objected to is as follows:

"Now, ladies and gentlemen, as applied to this case, whether or not the signal to turn left was given by plaintiff McCoy, as he testified, for defendant to have the benefit of the statute she would have had to be in a position on the highway that she could or should have seen it before plaintiff in fact started to make his turn.

"The fact, if it is a fact that defendant Gilbert's view of the farm tractor, operated by plaintiff McCoy, was hidden until she was passing the freight tractor trailer, a distance of 300 feet as she testified would not reimpose an obligation on plaintiff McCoy to again ascertain if the turn could be made with reasonable safety and again giving a hand signal. Unless he knew or should have known another and different vehicle was approaching, rather than the freight tractor trailer which he had observed as he testified."

According to our interpretation, the first paragraph quoted from the charge is a statement of the necessity of a causal relationship between any failure by McCoy to give a signal, and the ensuing collision, before any such failure would have ultimate significance in this case. We intended no overtones of statutory interpretation, or of the rules as to burden of proof in this connection.

The second paragraph quoted from the charge appears to us to leave upon McCoy the duties imposed by the statute, namely, the exercise of "due care to ascertain that the movement can be made with reasonable safety to other users of the highway, and then only * * * after giving an appropriate signal in the event any traffic may be affected by such movement * * * in sufficient time in advance of the movement indicated to give ample warning to other users of the highway who would be affected by such movement."

By virtue of the last clause in the second paragraph quoted

above from the charge, the court explained that these duties were of a continuing nature and that even if they had been performed once, that was not necessarily sufficient. Perhaps the principle could be expressed more clearly and positively, but it was actually contained in the charge.

Hence, it was not our holding that one signal or one act of exercising due care was necessarily adequate, but rather that in the circumstances of the case McCoy's entire course of conduct was subject to the jury's consideration in the light of the statute.

And it does not appear to us that the charge places any greater burden upon Gilbert in overtaking and passing the tractor-trailer than is imposed by Section 4511.27, Revised Code.

Gilbert again urges her sixth assignment of error, claiming that the court should have sustained her motions for directed verdict because of the claimed negligence of McCoy. Counsel cites the second paragraph of the syllabus of *Ziebro, Admx.*, v. *City of Cleveland*, 157 Ohio St., 489, 106 N. E. (2d), 161. After further careful consideration, we continue of the opinion that the conflicting evidence in the present case upon the issue of McCoy's negligence justified the submission of that issue to the jury.

The application for rehearing is denied.

*Application denied.*

WISEMAN, P. J., CRAWFORD and KERNS, JJ., concur.