Dubuque v. Coman.

### ALBERT DUBUQUE vs. GEORGE COMAN.

First Judicial District, Hartford, March Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The deposit of materials and erection of a shed by one on land of another, followed by their abandonment for years, is not necessarily inconsistent with the continued possession of the owner of the soil.

It is the right of all triers of issues of fact to infer what a man has done and what he intends to do, from his conduct and situation, beyond the positive testimony in the case.

To characterize and define a grantee's possession of land subsequent to the delivery of the deed, the deed itself is admissible in evidence. If apparently made pursuant to a power conferred by will, it would give color of title at least, and tend to show that the claimed possession was commensurate with the estate which it purported to convey.

The maxim *Falsus in uno, falsus in omnibus*, applied.

The defendant had a warranty deed from the heirs of *A* which called for 84 acres, but the land as actually bounded and described in the deed contained two acres less. *Held* that this deed could not give the defendant any colorable claim of title to the *locus in quo*, an adjoining tract, containing two acres, which belonged to one of the grantors in severalty, who had acquired it before the death of *A*.

The refusal of the trial court to grant a nonsuit after the plaintiff has rested his case, furnishes no ground of appeal to the defendant.

The discretion of a trial court as to the time and order of admitting evidence is not subject to review.

In cases where, under chapter 174 of the Public Acts of 1893, findings of fact are subject to correction by this court, in aid of an appeal, the conclusions of the trial court will not be disturbed, unless they are clearly and manifestly against the weight of evidence.

[Argued March 6th—decided April 25th, opinion filed July 9th, 1894.]

ACTION in the nature of trespass *quare clausum fregit*, brought before a justice of the peace, who gave the plaintiff judgment for $1.00 damages. An appeal was taken to the Superior Court for Windham County, by which, upon a trial to the court, *Ralph Wheeler, J.*, judgment was rendered in the plaintiff's favor for the same sum. The defendant appealed to this court, alleging errors in sundry rulings upon the trial, and also in the findings of fact, and in the refusal to find certain facts as claimed by him. *No error*.

The case is sufficiently stated in the opinion.

*Charles F. Thayer*, for the appellant (defendant).

*Charles E. Searls*, for the appellee (plaintiff).

BALDWIN, J. The judgment appealed from was one rendered for one dollar, damages, in an action for the disturbance of the plaintiff's possession of a small pasture lot, containing about two acres, and worth from $60 to $70.

The *locus in quo* was originally part of a farm of over 170 acres belonging to Hale Jacobs. He conveyed it, together with another part of the farm, to Salem Jacobs, in 1862. In 1874, the heirs of Hale Jacobs, among whom was Salem Jacobs, conveyed to the defendant another part of the farm, described as containing $83\frac{3}{4}$ acres, and particularly bounded by courses, distances, and monuments. The land within these bounds in fact only amounted to $81\frac{3}{4}$ acres, and adjoined the lot in question.

In 1876, Salem Jacobs died, testate, devising his residuary estate, including the *locus in quo*, to William Joslin, " in trust, for the following purposes and uses, to wit, to sell all my real estate at his discretion, after consulting and advising in relation thereto with my wife Mary Jane Jacobs, and to invest the avails of such sale safely, as he may think best, and to change such investments at his discretion, to sell after consultation with my said wife, any or all of the personal property belonging to my estate, and to invest, change and re-invest the avails thereof as he may think best, and to invest and re-invest any and all funds coming into his hands and belonging to my estate, at his discretion, at all times, and to pay over to my said wife Mary Jane Jacobs, the income, interest and dividends for her support and maintenance during the whole period of her natural life, and so long as she remains my widow and unmarried, and so long as in his opinion she conducts herself discreetly, at such times and in such sums as her needs may require. And I direct and enjoin upon said trustee to furnish to my said wife, as aforesaid, a

comfortable and liberal support, as aforesaid, according to her and my circumstances in life; and should the income from said trust estate prove inadequate to such support, I direct my said trustee to apply any or all the principal to said purpose, as the wants of my said wife may require."

Upon the death or marriage of the widow, the residue of the trust estate was to be divided between the brothers and sisters of the testator. Mr. Joslin subsequently resigned the trust, and the court of probate appointed Lawson Aldrich as his successor. In 1879, Mr. Aldrich, as such trustee, by a deed professing to be in execution of the power of sale granted to him in the will of Salem Jacobs, sold and conveyed to the plaintiff all the right and title which Salem Jacobs had at the time of his decease to certain lands particularly bounded and described, among other things, as containing in all 89 acres and two quarters, and lying north of land of the defendant. These lands were near the *locus in quo* but did not comprehend it.

Soon after this conveyance, the defendant and the plaintiff had a conversation as to the ownership of the *locus in quo*, in the course of which the defendant said that he thought it belonged to the plaintiff.

In 1880, the defendant sold and conveyed to his sister, by warranty deed, all the lands he had bought of the heirs of Hale Jacobs, and he has never since had title to any of them, though he remained in possession of the whole.

Up to 1885, the *locus in quo* was occupied by the trustees of the estate of Salem Jacobs. Soon afterwards the defendant notified the plaintiff that he claimed title to the lot, and plaintiff asserted that the title was in himself. In each of the years 1885, 1886, and 1887, the defendant, on several occasions put some cattle on the ground, and took away some fruit and wood. In 1888, he leased it to a third party, who used it for pasturage during that season.

In 1889, the defendant put up a small tool shed upon it, in which he placed some tools and boards, and moved some wagons and lumber there, where they have all ever since re-

mained. The plaintiff forbade these acts. Soon afterwards, the defendant removed from the State.

In 1890, the plaintiff, under a claim of title, by reason of the Aldrich deed, pastured his cattle on the lot throughout the entire season, without permission or objection from any one, and did the same in 1891 until July, and throughout the season of 1892. He also gathered some apples there, and took away some wood, during these years. In June, 1891, he procured a deed from Marcus M. Towne, the successor of Aldrich, as trustee, of the right and title which Salem Jacobs had at the time of his decease to the *locus in quo.* This deed purported to be given by virtue of authority granted in the will of Salem Jacobs.

In August, 1891, the defendant entered on the lot, and a year later this action was brought. On July 11th, 1892, shortly before the suit was begun, the defendant sent a letter to the heirs of Hale Jacobs, stating that the plaintiff had turned his stock into the lot in question, under a claim of title, and that he wanted them to get him out, and give the defendant possession, at once.

The finding of the court below, after setting forth these facts, states that from the delivery of the Towne deed to the bringing of the suit, the plaintiff had the actual, adverse, and exclusive enjoyment and possession of the premises.

The defendant urges that this conclusion cannot be true, in view of the acts of ownership and possession on his part which have been mentioned; and that the plaintiff's stock certainly cannot have pastured under the shed, or under the pile of lumber which the defendant left near it.

In our opinion, the trial court was warranted in the result to which it came, in this particular. The deposit of materials, and erection of a shed, on the land of another, followed by their abandonment for years, is not necessarily inconsistent with his continued possession. A study of the evidence has satisfied us that the testimony of the defendant as to these matters upon which his counsel particularly relies, was entitled to little weight, especially when considered in the light of his letter of July, 1892, the demands in which are

plainly based on his being then out of possession. He was a swift witness, when he thought it would serve his interests, and a most reluctant one where he thought a true answer would make against him. On his direct examination he testified that his sister had reconveyed some of the Jacobs land back to him, so that he now owned part of the *locus in quo ;* but on cross-examination he was forced to admit that her only conveyance had been made to a third party. He also, on cross-examination, when shown the letter of July 11th, 1892, to the Jacob heirs, signed with his name, denied writing it, or any knowledge of it, or having had any correspondence with them ; but finally, on being closely pushed, said that he sent it, but another man wrote it, and that he had heard from the heirs. We think the trial court was fully justified in applying the maxim *falsus in uno, falsus in omnibus,* and rejecting the defendant's testimony, if not altogether, then certainly when it was in conflict with that of other witnesses.

It is found by the Superior Court that the plaintiff put up the walls around the lot in 1890 or 1891, and it is assigned for error that there was no evidence of this, but that, on the contrary, there was evidence from the defendant that he, at one time, put up the walls. The court may well have believed so much of his testimony as went to show that the walls had been repaired, and have given no credit to his assertion that such repairs were made by him, in view of the evidence which had been produced on the other side that the plaintiff had occupied the lot for fourteen years, without interference from the defendant. If the walls needed repairs during that period, the party in possession would naturally be the one to make them. It is the right of all triers of issues of fact to infer what a man intends to do and has done from his conduct, beyond the positive testimony in the case. *Union Bank* v. *Middlebrook,* 33 Conn. 100. The same considerations seem to us sufficient to support the finding, of which the defendant complains, that the acts claimed by him to show possession on his part, were done for the purpose of

maintaining such a claim, and of asserting a title, which was not set up in good faith.

There are many other points on which there was a conflict of testimony, the plaintiff being the principal witness upon one side, and the defendant on the other. It is enough to say, in reference to these, that we think none of the assignments of error are supported by the·evidence. The statute upon which they rest (Public Acts of 1893, p. 318, chapter CLXXIV.) allows in certain cases exceptions to the conclusions of fact of a trial court to be brought before this court, by appeal, on a report of the evidence from which such conclusions were drawn, and requires us to determine whether they are justified by such evidence. It is, however, provided that "in passing upon said questions of fact, said Supreme Court shall not reverse the finding of the trial court upon any question of fact, unless it find the conclusions of such trial court upon such question clearly against the weight of evidence."

The proceeding thus authorized is analogous to that upon a motion for a new trial on the ground that a verdict is against evidence, and the same considerations which have established the rule that every reasonable presumption is to be made in support of a verdict thus attacked, dictated, no doubt, the provision of the statute thus quoted, as to the weight to be attached to the findings of a court. *Farrell* v. *Waterbury Horse R. R. Co.*, 60 Conn., 239, 253.

It is also assigned for error, that the court admitted the deed from Towne, trustee, to the plaintiff, given in June, 1891, in proof of the latter's possession. The trespass complained of occurred after this conveyance was made. The terms of the deed include the *locus in quo*, and the plaintiff claimed title under it. Whether, therefore, it was a proper execution of the power granted in the will of Salem Jacobs, or not, it was admissible to characterize and define the possession subsequently held by the plaintiff. It gave at least color of title, and tended to show that a possession claimed under it was commensurate with the estate which it purported to convey. 2 Greenleaf on Evidence, §§ 618, 619.

The defendant urges that, when offered, there was no proof that the land ever belonged to the trust estate; but if there was anything to this objection, it was disposed of by the subsequent introduction of such evidence; so that no injustice can have been done by the ruling.

The refusal of the court to grant a nonsuit when the plaintiff rested his case, furnished no ground of exception to the defendant. *Bennett* v. *Agricultural Insurance Co.*, 51 Conn., 504.

The admission by the court, after the defendant had rested, of the probate record of the appointment of the successors to Wm. Joslin, as trustee under the will of Salem Jacobs, and of sundry deeds of the Jacobs lands, as evidence in rebuttal and also in chief, can constitute no ground of error. The discretion of a trial court, as to the time and order of admitting evidence, is not subject to review.

The court held that the defendant's acts upon the premises from 1885 to 1891, inclusive, did not prove or constitute actual possession on his part, but that he was an intruder without color of title, and the actual possession was either in Towne, trustee, as the legal owner, or in the plaintiff. The acts of the defendant were of an equivocal character. The lot was of trifling value, and belonged to a trust estate. Up to 1885, it had been occupied by tenants under the trustee. Whether, after that time, the defendant, from the use he made of it, was to be regarded as in possession, or a mere trespasser, was a question of fact, the solution of which depended mainly on the credit to be attached to his own testimony. For the reasons already given, we think the court was justified in giving this very little credit, and, so, that the finding complained of is not clearly against the weight of evidence.

The court also held as matter of law, that the deed from Towne, trustee, of June, 1891, gave the plaintiff title, or if not title, then a claim or color of title which characterized his possession. It is enough to support the judgment that it gave color of title, and this, in our opinion, it clearly did. If it be so that the power to sell was personal to the trustee

named in the will, and its exercise dependent on conditions precedent, as to the fulfillment of which there was no evidence, yet the legal title to the lot was vested in his successor in the trust, and that title (described by reference to the date of the testator's decease) his deed purported to convey, with a covenant of good right to convey.

The defendant's claim of title, on the other hand, was not even colorable. It rested simply on the fact that he held a warranty deed which called for 83¾ acres, and that the bounds within which the granted premises were described, contained only 81¾, while the *locus in quo* was an adjoining parcel, and, if included, would make up the two acres lacking. But while an adjoining parcel, it was not owned by the heirs of Hale Jacobs who were the grantors in the conveyance. One of them, Salem Jacobs, owned it in severalty, by a title which accrued to him before the death of Hale Jacobs. Under such circumstances, it cannot be said that the defendant ever had color of title by his deed of 1874; and in addition to this, in 1880, long before he claimed to have taken possession of the lot in controversy, he conveyed to his sister, with full covenants of warranty, the entire tract covered by that deed, describing it as containing 83¾ acres.

There is no error in the judgment complained of.

In this opinion the other judges concurred.