28 N.J. Super. 275 (1953)
100 A.2d 555
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH E. SCHULER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1953.
Decided November 13, 1953.
*276 Before Judges CLAPP, GOLDMANN and EWART.
*277 Mr. Hubert J. Franklin argued the cause for defendant-appellant (Messrs. Franklin & Muser, attorneys).
Mr. Paul T. Huckin argued the cause for the State (Mr. Harry L. Towe, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
The defendant and one Benedict Caputo were indicted for bookmaking. Both pleaded not guilty. On the State's motion a severance was granted, and defendant was tried first. The jury returned a verdict of guilty, and defendant appeals raising three questions, all questions of evidence.
Caputo testified for the State, saying that the defendant, for a consideration, had gotten him to take bets as the defendant's agent. On cross-examination Caputo testified positively he had been doing this for the defendant only six weeks and had never made book before. Defendant then produced a witness, Suhoke, offering to prove through him that he, Suhoke, had been placing bets with Caputo for a year, not six weeks. Defendant's first point on appeal is that the trial court erred in refusing to receive this proof.
The rule is settled in this State that if a question is put to a witness (the primary witness, we may call him) on cross-examination and answered, the testimony of other witnesses (secondary witnesses, they may be called) cannot be admitted to show the falsity of the answer except in two classes of cases. All matters not within these classes are commonly lumped under the unfortunate designation "collateral matters." Maguire, Evidence, Common Sense and Common Law, p. 68 (1947). The first class comprises those situations where the matter asked of the secondary witnesses is relevant to an issue in the case, quite apart from the circumstance that it may serve to discredit the primary witness. State v. Hatch, 21 N.J. Super. 394 (App. Div. 1952). The second class comprises those situations where the proof from the secondary witnesses establishes, on the part of the primary witness, his interest, bias, corruption or *278 certain other matters stated in 3 Wigmore on Evidence (3rd ed.), sec. 1005, 1022, none of which appear here. Defendant relies upon State v. Salimone, 19 N.J. Super. 600 (App. Div. 1952), but that case clearly belongs to the second class stated. The secondary witness there was interrogated as to the primary witness' interest in the matter.
The above rule obtains even though, so defendant urges us, Suhoke's testimony would demonstrate quite forcefully Caputo's untrustworthiness on the stand and even though, as is clearly the fact, Caputo was the State's key witness. As stated in the trial court's charge to the jury, he was the only witness who "testified to anything directly implicating Schuler in the commission of this crime." Indeed, the rule obtains even though the testimony of Suhoke would neither consume time unduly, confuse the issues, mislead the jury, produce an undue prejudice, nor surprise the State unfairly (the State could hardly be held to have been unfairly surprised; it had doubtless looked into Caputo's bookmaking activities in connection with this very indictment against him). The rule, as was said in State v. Hatch, supra, has "long been settled"; and although it and, indeed, many other rules of evidence (Editorials, 75 N.J.L.J. 4-136, January 3-April 10, 1952) may very much call for an over-hauling of the sort undertaken in this State in the law of procedure, nevertheless a revision such as this, most certainly, should not be entered upon by an appellate court through the process of reversals and the ordering of many new trials. As to the disposition made of this rule by the Model Code of Evidence, see sec. 106 (there should apparently be added at the end of paragraph 1 (c) "other than honesty or veracity") and 303.
The defendant also seeks to justify the bringing in of this proof, upon the theory that if Caputo had placed bets for a year, instead of the six weeks he testified to, he must have been doing it on his own, even during the six weeks. But this does not follow, and hence the failure to admit the testimony was not "manifest injury." R.R. 1:5-1. The proof, quite as well, could be said to have led to the *279 view that Caputo had worked for the defendant for one year instead of six weeks, and that would not have helped defendant's case.
Defendant's second point is that it was error to have let into evidence certain betting slips and certain testimony as to them. However, the testimony adverted to was not objected to at the trial, and we do not think its admission constituted a substantial injustice. State v. Picciotti, 12 N.J. 205 (1953). We are therefore concerned only with the slips. The sole point made here is that the slips were hearsay.
The witness, Sutherland, connected in a managerial capacity with the company employing the defendant, was asked on cross-examination whether, at a grievance hearing, he had said that betting slips were found in defendant's tool box. He answered affirmatively. The State objected to the question, but withdrew its objection when defendant's counsel claimed he was seeking to prove a "frame-up" on the part of Sutherland. Defendant's counsel then "very dramatically demanded" (as the trial court put it) whether Sutherland had the slips in court. The testimony showed clearly that Sutherland had not attended the opening of the tool box, though his subordinates had. On redirect examination, the prosecutor had Sutherland identify the betting slips he referred to and then, over defendant's objection, put them in evidence. In a direction to the jury the court confined the probative force of this evidence to one point. The slips were not to be taken as evidence of the accusation made in the indictment, but merely showed, in connection with the charge of a "frame-up," that these were the slips Sutherland had alluded to; that is, the slips had force solely with relation to the question whether they were fictitious.
The betting slips thus are not hearsay. 6 Wigmore on Evidence (3rd ed.), §§ 1788, 1789; cf. Rathbun v. Brancatella, 93 N.J.L. 222 (E. & A. 1919). They were not introduced as evidence of the truth of any matter asserted in them, nor did they go into evidence as slips found in defendant's tool box. They were introduced merely as proof of *280 the existence of slips which Sutherland was talking about and which, so he thought, came from the tool box. Any prejudice due to the failure of the jury to make so fine a distinction was brought down upon the defendant by the line of examination conducted on his behalf which was designed to create in the jury's mind that these slips did not exist.
Defendant's third point is that the court erred in refusing to admit into evidence a receipt which, so defendant claimed, listed everything found in the tool box. Defendant sought to prove thereby that the betting slips were not in the box. However, the receipt was headed as follows: "The following is an itemized list of tools stored in Joseph Schuler's tool box on Tuesday, May 27, 1952." The fact that betting slips were not included under such a heading, furnishes no proof whatsoever that they were not in the tool box.
Affirmed.