SCHUTZ, Jr. *v.* BREEBACK, TO OWN USE AND USE OF STATE ACCIDENT FUND

[No. 216, September Term, 1961.]

180

*Decided March 21, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and MARBURY, JJ.

*Paul F. Due* for appellant.

*Douglas G. Bottom,* with whom was *Gerard V. Caldwell* on the brief, for appellee Breeback.

*Thomas B. Finan, Attorney General, J. Howard Holzer* and *Philip T. McCusker, Special Attorneys,* on the brief, for the State Accident Fund.

HENDERSON, J., delivered the opinion of the Court.

Herman A. Breeback, an employee of the State Roads Commission, was struck by an automobile and injured while working on Belair Road at about 9:30 A. M. in a drizzling rain. He had been brought to the place of the accident in a State Roads' truck, which parked in the south-bound lane next to

the shoulder. Belair Road is a four-lane highway, with two lanes, twelve feet wide, in each direction. The employees were using the tailgate of the truck as a bench to repair damaged guard rails which had been knocked down over the weekend. Breeback had his back turned to the oncoming traffic.

Schutz testified he was driving south on Belair Road, from 25 to 40 feet behind a cattle truck in the right or slow lane. He did not see the parked State Roads' truck until the cattle truck pulled left to pass it. He applied his brakes, but his car skidded sideways on the wet surface, striking Breeback and another worker and the tailgate. On the other hand, there was testimony that there was no cattle truck involved, but that Schutz skidded 300 feet.

There was testimony that a "Men Working" sign had been placed by the foreman at a point 300 feet from the parked truck. Two other employees testified it was placed on the shoulder alongside the slow lane, south-bound. One employee testified it was on the line separating the two south-bound lanes. Schutz testified he did not see any "Men Working" sign prior to the accident, but admitted seeing it afterwards. There was a difference in testimony as to whether the road was straight or curved at that point, but Schutz admitted the road was straight for about 200 feet from the point of impact.

During the trial the appellant offered in evidence a chart of "Speed and Stopping Distances" incorporated in a pamphlet prepared and published by the Department of Motor Vehicles, but the court excluded it.

The jury found a verdict for the plaintiff. On appeal, the only points pressed are the rulings of the court in regard to the effect of the location of the warning sign, and the exclusion of the chart above mentioned.

The appellant offered in evidence a manual of Traffic Control Devices of the Maryland State Roads Commission. After specifying the size of a "Men Working" sign, it is provided that this "sign shall be placed approximately three hundred and fifty feet from each end of the point where the men are at work, in the center of the road unless the width of pavement is less than twenty feet, or poor shoulders or other con-

ditions make this inadvisable." It also provides that the sign "should be moved forward as the work progresses so that there is at no time a distance of more than one thousand feet between the sign and the workmen."

The appellant offered a prayer that if the plaintiff knew that the sign had not been "placed in the center of Belair Road as required by State Roads Regulations", and "if the Jury shall find from the evidence that failure to place said sign in the middle of Belair Road caused or contributed to the happening of this accident, then the Plaintiff, in working at the rear of said truck, under said conditions, was guilty of contributory negligence, or assumed the risk of said accident, and the verdict of the Jury must be for the Defendant." He objected to the refusal to grant the prayer, and also to the charge that "even if you find that the foreman who was in charge of this gang of which the plaintiff was a member did not place that sign in conformity with regulations of the State Roads Commission, that cannot be held against the plaintiff in this case who was a subordinate employee * * *." The court indicated that the appellant's counsel might argue that if the sign had been in the center, the defendant would have been more likely to see it, but that "it was of no legal significance whether the sign was off the side of the road and that the plaintiff knew about it."

The prayer was properly refused. There was no evidence that the plaintiff knew where the sign had been placed. He was not questioned on the subject. Thus there was no factual basis for a jury finding that he knew. Moreover, the prayer sought a directed verdict, if he knew. There was no objection to the lack of an instruction as to contributory negligence on the part of the plaintiff, except in regard to the location of the sign. Cf. *City of Baltimore v. Walker,* 208 Md. 454. It is generally recognized that workmen in the highway cannot be as alert as pedestrians or other travelers, and they are said to occupy a special status. The question whether such a worker has exercised reasonable care is ordinarily left to the jury. See the cases in a note, 5 A. L. R. 2d 757. In *Baltimore Transit Co. v. Worth,* 188 Md. 119, 133, we said that it was admitted that negligence on the part of a fellow employee, in

failing to move a guard rail struck by a passing streetcar, could not be imputed to the injured plaintiff. See also *Prince George's County v. Timmons,* 150 Md. 511, 516. In *Conowingo Power Co. v. State of Maryland,* 120 F. 2d 870 (C. A. 4th), it was pointed out that negligence of a foreman would only constitute a ground of defense if it were the sole cause of the injury, and not merely a concurring cause. See also *Melville v. State of Maryland,* 155 F. 2d 440 (C. A. 4th). The jury might have found that the location of the sign had no causal relation to the happening of the accident, and that the real cause was following the cattle truck too closely under the weather conditions then existing.

In regard to the objection to the instruction given, we think the instruction was more favorable to the defendant than otherwise. In the first place, it assumed that the plaintiff knew where the sign was placed, and that the placing was in violation of the regulation. On the last point, we read the rule as not requiring that the sign be placed at a precise distance of 350 feet, or that it be placed in the center of the road invariably. The phrase is "unless * * * poor shoulders or other conditions make this inadvisable". The foreman, being ill, did not testify. If he had, it is quite possible that he would have been able to justify the placing of the sign alongside or in the center of the southbound lanes. The regulation clearly confers a large measure of discretion. In any event, we find no error in the instruction to the effect that the foreman's negligence would not be imputed under the circumstances.

The chart of Stopping Distances was not offered through any witness connected with the Department of Motor Vehicles, a police officer, or anyone having expert knowledge of the subject. The objection may be sustainable on that ground alone. The court could hardly take judicial notice of a chart without testimony of its source and accuracy. The appellant says that in *Lenehan v. Nicholson,* 214 Md. 414, 420, this Court referred to this same chart and took judicial notice of it. The chart was there used to indicate that skid marks testified to by a police officer did not contradict the appellee's testimony as to his actual speed. The case is not a precedent for

a holding that the chart is admissible in evidence at a trial, over objection, particularly where, as in the instant case, there was testimony as to unusual weather conditions that would make the usual stopping distances inapplicable, and no witness was present to testify as an expert in the matter. In *Bozman v. State,* 177 Md. 151, 156, it was pointed out that the make of car, conditions of the tires, the grade and condition of the road surface, are all matters that should be included in a hypothetical question, put to an officer trained in the subject matter. In *Thedorf v. Lipsey,* 237 F. 2d 190 (C. A. 7th), it was held that a similar chart was properly excluded.

*Judgment affirmed, with costs.*