84 N.J. Super. 382 (1964)
202 A.2d 213
PONCE DELEON McDONALD, AN INFANT, BY HIS GUARDIAN AD LITEM, MARGIE LEE McDONALD, AND MARGIE LEE McDONALD, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
DELLA MULVIHILL AND JOHN MULVIHILL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1964.
Decided July 1, 1964.
*383 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Rocco Wm. LoPiano argued the cause for appellants.
Mr. H. Curtis Meanor argued the cause for respondents (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
*384 The opinion of the court was delivered by COLLESTER, J.A.D.
Action was brought in the Superior Court, Law Division, to recover damages sustained by plaintiff Ponce DeLeon McDonald, an infant pedestrian, who was struck by an automobile owned by Della Mulvihill, and operated by John Mulvihill, her husband. At the close of the evidence the court dismissed the action against Della Mulvihill because there was no proof that her husband was operating the automobile as her agent at the time of the accident. The case against defendant John Mulvihill was submitted to the jury, which returned a verdict of no cause for action.
Plaintiffs' motion to set aside the verdict and grant a new trial was denied. However, on this appeal they do not argue that the verdict was contrary to the weight of the evidence. They limit their grounds of appeal to two issues, namely, that the trial court erred (1) by admitting in evidence a reaction and stopping distance chart and a braking distance chart, both published by the New Jersey Division of Motor Vehicles, and (2) by failing to instruct the jury on the question of proximate cause with reference to contributory negligence of the infant plaintiff.
Ponce DeLeon McDonald was injured on July 26, 1960, at about 11:30 A.M., as he was crossing from the west to the east side of Route 440, between Sip Avenue and Broadway, in Jersey City. Route 440 is a five-lane, heavily travelled highway. Two of the lanes are northbound and two southbound. The fifth and center lane is not used for traffic, being controlled by a red light at all times, as a safety factor. At the intersection with Sip Avenue, traffic is controlled by traffic lights which a pedestrian can activate by pushing a button mounted for that purpose on a pole located at the side of the highway near the crosswalk.
On the day of the accident, the infant plaintiff, then aged 10 years and 10 months, accompanied by his brother, crossed from the east side of Route 440, where they lived, to Tooley's Truck Stop located on the west side of the highway. An hour and a half later the infant decided to return alone. He went *385 to the crosswalk which crosses Route 440 at Sip Avenue and pushed the traffic light button in order to stop traffic so that he could cross. While waiting for the lights to change, he walked northerly from the intersection to play at a clothing store sign located on the Tooley property. He testified the traffic lights changed and traffic stopped, and he started to cross the highway at this point, approximately 200 feet north of the intersection. He had crossed into the second or inside southbound lane when he heard the squeal of brakes and began to run. He was struck by defendant's vehicle which was proceeding southerly in the inside southbound lane and which swung into the center lane in an effort to avoid striking the boy.
After the accident defendant's automobile was taken to the Hudson County police headquarters and thereafter to the motor vehicle inspection station in Jersey City, where the brakes were tested by the station supervisor, Stephen J. Bruckner.

I.
At the trial plaintiffs called Bruckner as a witness. He was qualified as a brake expert by the court, based on his employment by the Division of Motor Vehicles for 22 years. He testified that his test of defendant's automobile after the accident indicated there was "insufficient reserve" in the parking brake and that the service brake pedal  the foot brake  went "practically to the floor." A Weaver test, in which the vehicle was driven over four plates set in the floor to register the braking effort on each wheel, revealed that the pressures on the two front and two rear brakes, respectively, were equal but too low. According to Bruckner, the normal Weaver readings for this type of vehicle are 1,000 pounds of braking pressure on the front wheels and 600 pounds on the rear wheels. He found this automobile to register 600 pounds and 400 pounds, respectively.
On cross-examination defendant's counsel asked Bruckner the distance in which a car travelling at 25 M.P.H. on a dry *386 black-top roadway, with good brakes, could be brought to a stop. Over plaintiffs' objection that the witness had not qualified other than as an inspector of brakes in a motor vehicle inspection station, Bruckner was allowed to testify that the stopping distance at 25 M.P.H. would be 15 feet.
On further cross-examination and over plaintiffs' objection, Bruckner identified the "Reaction Distance and Shortest Stopping Distance Chart" contained in the Driver's Instruction Manual issued by the Division of Motor Vehicles, and a "Braking Distance Chart" also published by the Division. Without objection on the part of plaintiffs, he testified that the braking distance chart indicated that the stopping distance of an automobile going 25 M.P.H. was 39 feet [exclusive of reaction distance] and, further, that having seen the braking distance chart, his previous statement that such stopping distance was 15 feet was inaccurate, according to the chart.
The importance of this testimony was due to the fact that the police officer, who arrived at the scene immediately after the accident, measured tire marks in the roadway extending for a distance of 33 feet from the rear of defendant's motor vehicle. This tangible evidence created the inference that defendant had brought his vehicle to a stop within 33 feet from the point of his first firm application of the brakes, and thus within the normal stopping distance of 39 feet set forth in the Division of Motor Vehicle's chart for an automobile being operated at a speed of 25 M.P.H.
On defendant's case the Division's charts were received in evidence over plaintiffs' objection. Plaintiffs argue that admission of the charts as evidence was erroneous and prejudicial, because the charts were hearsay and there was no opportunity for cross-examination to determine the conditions under which braking distances contained therein were computed or the accuracy thereof.
Our courts have not considered the precise question of the admissibility of braking distance charts. Plaintiffs refer us to decisions in other jurisdictions which hold that such charts *387 cannot be received in evidence as proof of the braking distance of an automobile. See Thedorf v. Lipsey, 237 F.2d 190 (7 Cir. 1956), and cf. Lemons v. Holland, 205 Or. 163, 286 P.2d 656 (Sup. Ct. 1955); Breshears v. Myers, 266 S.W.2d 638 (Mo. Sup. Ct. 1954). On the other hand, defendant points out that we have taken judicial notice of such charts in Cresse v. Parsekian, 81 N.J. Super. 537, 540 (App. Div. 1963), certification granted 41 N.J. 587 (1964), and that in the overwhelming majority of the cases where this problem has been presented, the courts have ruled in favor of taking judicial notice of reaction time and stopping distance, particularly when set forth in state publications. 84 A.L.R.2d 979, 980 (1962).
Our Supreme Court has recently permitted the admission in evidence of "safety codes," as objective standards of safe construction, generally recognized and accepted as such in a construction industry  not as substantive law or proof of regulations or absolute standards having the force of law or of scientific truth  but in connection with expert testimony which identifies the safety code as illustrative evidence of safety practices or rules generally prevailing in the industry, and as support for the opinion of the expert concerning the proper standard of care. McComish v. DeSoi, 42 N.J. 274, 282 (1964). However, insofar as "learned treatises" are concerned, our courts have held that they may not be received in evidence. If an expert witness refers to them as authority, statements may be read therefrom for the purpose of contradicting him. If he recognizes a treatise as a standard authority, he may be confronted with statements appearing therein which conflict with his testimony. See McComish v. DeSoi, supra, at p. 281; Ruth v. Fenchel, 21 N.J. 171, 176-79 (1956), affirming 37 N.J. Super. 295 (App. Div. 1955); New Jersey Zinc & Iron Co. v. Lehigh Zinc & Iron Co., 59 N.J.L. 189, 192 (E. & A. 1896).
In the case sub judice it is apparent that the charts published by the Division of Motor Vehicles are recommended by the National Conference of Stopping Distance Charts and are *388 based on stopping distances from speeds of 20 M.P.H. taken from the Uniform Vehicle Code, and converted to higher speeds by factors derived from results of tests of the United States Department of Commerce Bureau of Roads. It obviously is not a "safety code." It purports to be a determination of the average braking distance in which an automobile will stop under certain conditions. Unquestionably such charts are based upon experiments conducted with different motor vehicles and drivers, at different times and places, and under varying conditions. Furthermore, there are many factors which undoubtedly might affect the stopping distance of a motor vehicle. The condition of the tire tread, weight of the vehicle, type and condition of brakes, force with which brakes are applied, the type and condition of the roadway and the differences in reaction time among individual drivers, are but some of those factors.
We are satisfied that such charts should not be received in evidence as affirmative proof of the exact braking distance of a particular automobile which is driven at a known speed.
We come now to the question  was the admission in evidence of the charts of the Division of Motor Vehicles in the instant case prejudicial error requiring a reversal and a new trial?
When Inspector Bruckner testified on cross-examination that the stopping distance of an automobile going 25 M.P.H. would be 15 feet, defendant was entitled by means of further cross-examination or the introduction of other evidence to rebut or contradict such a statement, since the issue of defendant's rate of speed was material and relevant and not a collateral matter. See State v. Schuler, 28 N.J. Super. 275, 277-78 (App. Div. 1953); State v. Hatch, 21 N.J. Super. 394, 399 (App. Div. 1952); Kiernan v. Mauer, 13 N.J. Super. 18, 22 (App. Div. 1951); State v. Lerman, 107 N.J.L. 77 (E. & A. 1930).
Defendant's further cross-examination of the witness resulted in an admission that his statement that the stopping distance was 15 feet was inaccurate, according to the Division's *389 charts. He further testified, without objection, that the charts showed a braking distance of 39 feet for an automobile operated at a speed of 25 M.P.H. The charts, when subsequently received in evidence, contained no additional facts.
The trial court referred in its charge to R.S. 39:3-68 requiring that a motor vehicle with four-wheel brakes must be capable of stopping within 30 feet at a speed of 20 M.P.H. The statutory distance does not include reaction time. Defendant had testified that he was proceeding between 20 and 25 M.P.H. and there was no contradiction thereof. Defendant's vehicle left 33 feet of tire marks on the roadway, indicating that defendant stopped his vehicle within 33 feet after application of the foot brakes. Thus, the jury was made aware that defendant's vehicle came to a stop only three feet further than the statutory required stopping distance of a vehicle operated at a speed of 20 M.P.H. Therefore, it could have inferred that the speed of defendant's vehicle could not have been much greater than 20 M.P.H.
In view of the statute which was charged by the trial judge, the fact that the charts were published by the Division of Motor Vehicles and the inspector was being confronted with a publication of the very department by which he was employed to rebut his estimate of a stopping distance of 15 feet, and the further fact that the inspector testified, without objection, to the contents of the charts, we find that the admission of such charts was not prejudicial to plaintiff.

II.
The trial court's charge to the jury included a complete and instructive definition of proximate cause. However, plaintiffs allege that the instruction on this principle of law was directed by the court only to the issue of defendant's negligence, and that the jury was not adequately instructed that the child's contributory negligence could bar recovery only if it also was a proximate cause of the accident. In its charge the court stated:
*390 "In other words, the burden of proving contributory negligence is upon the one who asserts it, in this case, the defendant. Therefore, the defendant must demonstrate to your satisfaction that the plaintiff was negligent and that that negligence contributed to the injury, as I have already indicated to you." (Emphasis added)
In Kreis v. Owens, 38 N.J. Super. 148, 155 (App. Div. 1955), the trial court's reference to "proximate cause" was held to be an inadequate instruction in the absence of a definition and explanation of the term for a jury of laymen. The present case presents the opposite situation. Here the objection is to a charge which gives a full and understandable statement of applicable law but which fails to specifically use the term "proximate cause" in discussing contributory negligence. In Snyder v. Bicking, 115 N.J.L. 549 (E. & A. 1935), the court said:
"In short, contributory negligence must be something, in some measure, no matter how small, jointly causative of the injury. The trial judge did not, it is true, use the phrase `proximate cause' in connection with contributory negligence, but did say quite plainly that if the plaintiff Samuel Snyder `did in any way contribute to this accident through his negligence, that is through his failure to operate his car as an ordinarily prudent person would do under the same circumstances, or did something that an ordinary person would not do under the same circumstances, which in any way contributed to the accident, then he cannot recover.'
The word `contribution' necessarily connotes a share in causation. `Negligence such as contributes to an accident' is necessarily to some extent causative of it." 115 N.J.L., at p. 551.
It is clear to us that the jury could not have been misled by the trial court's instruction despite its failure to use the specific words "proximate cause" when it discussed the issue of the infant's contributory negligence. We are satisfied that the members of the jury would have understood the charge on contributory negligence as including the discussion of proximate cause previously given with regard to the issue of defendant's negligence.
A reading of the charge as a whole satisfies us that it presented the law fairly, clearly and completely to the jury. Ristan v. Frantzen, 14 N.J. 455, 461 (1954); Vadurro v. *391 Yellow Cab Co. of Camden, 6 N.J. 102, 107-08 (1950); Abramsky v. Felderbaum, 81 N.J. Super. 1, 7 (App. Div. 1963).
The judgment of the Law Division is affirmed.