DANTE MARCIO v. HELM'S EXPRESS, INC., ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued January 3—decided March 9, 1967

*Charles A. Watrous* and *Barry R. Schaller,* with whom, on the brief, was *Joseph Shelnitz,* for the appellant (plaintiff).

*Charles G. Albom,* with whom, on the brief, was *Arthur C. Schubert,* for the appellees (defendants).

THIM, J.   This action arose as a result of an intersection collision in the city of New Haven between a station wagon owned and operated by the plaintiff and a truck owned by the defendant Helm's Express, Inc., and operated by the defendant Ralph W. Myers.   The plaintiff charged that Myers' negligent operation of the truck was the proximate cause of the collision.   The defendants denied the various allegations of negligence and, by way of special defense, pleaded the plaintiff's contributory negligence.   From a verdict and judgment rendered in favor of the defendants, the plaintiff has appealed.   He assigns error in the court's refusal to give four written requests to charge.   An assigned error relating to the court's failure to

charge on the doctrine of last clear chance has been abandoned.

A brief recital of what the parties claimed to have proved is necessary in order to put the plaintiff's requests in proper context.

On March 9, 1963, at approximately 10:30 a.m., the plaintiff, aged seventy-nine, was operating his station wagon in a southerly direction on State Street in New Haven. Myers was driving a Helm's Express, Inc., truck in a northerly direction on the same street at the same time. State Street is a two-lane highway. The plaintiff offered evidence to prove that he intended to make a left turn into Lyman Street, which intersects State Street from the east but does not cross it. Traffic in the north-bound traffic lane was heavy. The plaintiff halted his vehicle on the extreme westerly side of State Street and waited to make the left turn. From where he waited, the plaintiff had an unobstructed view of State Street for some 550 feet to the south. After waiting for some time and finally discerning no oncoming traffic, the plaintiff commenced to make his left turn. He was under the impression that he had turned his left directional signal on, although he was not certain. He had almost completed his turn when his station wagon was struck on the right side by the truck operated by Myers. The plaintiff did not see the truck until a moment before the impact, and he claimed he did not know from where it came.

The defendants claimed to have proved that at the time of the collision both northbound and south-bound traffic on State Street near the Lyman Street intersection was heavy. Myers, as he approached Lyman Street on State Street heading north, was operating the truck in a line of traffic at a speed of

about twenty miles per hour. As Myers neared and started to enter the Lyman Street intersection, the plaintiff, from a stationary position at the westerly curb of State Street, suddenly turned his vehicle to the left, crossed the southbound traffic lane and started to cross the northbound traffic lane of State Street in an apparent attempt to enter Lyman Street. The front end of the truck struck the right side of the station wagon. The point of impact was within the northbound traffic lane of State Street. Because of the traffic in the southbound traffic lane, Myers had not seen the station wagon until he was close to Lyman Street. The defendants also offered evidence that at no time prior to the collision did the plaintiff give a signal of any kind which would indicate an intention to make a left turn.

As one of the vehicles approaching the intersection was intending to make a left turn, the rights and obligations of the operators were governed by the requirements of §§ 14-241 (b), 14-242 (a) and (b), 14-244 and 14-246 of the General Statutes in effect on the date of the collision. See *Kronish* v. *Provasoli,* 149 Conn. 368, 371, 179 A.2d 823. The pertinent provisions of these sections appear in the footnote.[1]

---

[1] "Sec. 14-241. TURNS. . . . (b) At any intersection where traffic is permitted to move in both directions on each highway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the highway nearest the center line thereof and by passing to the right of such center line where it enters the intersection, and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the highway being entered."

"Sec. 14-242. TURNS RESTRICTED. SIGNALS TO BE GIVEN. STOPPING. U-TURNS. (a) No person shall turn a vehicle at an intersection unless the vehicle is in a proper position on the highway as required by section 14-241, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move

In three of his requests the plaintiff asked that the jury be charged that, if he, in the exercise of ordinary prudence, reasonably believed he could make the left turn without the risk of a collision, he had a right to cross in front of the truck without giving any signal, that it would be the duty of Myers to yield the right of way to him when Myers perceived or should have perceived through "Change of Direction or other significant indication on the part of the . . . [plaintiff]" that he intended to turn, and that, if the truck was not within the vision of the plaintiff as he commenced the left turn, he was not required to give a signal, at least 100 feet before turning, of an intention to turn.

The plaintiff's requests suggest that a driver making a left turn is excused from the statutory requirement of giving a signal of an intention to turn left if the making of the turn would not involve the risk of a collision or if other traffic is not observed by the driver when the turn is commenced. A reference to the pertinent statute heretofore set

right or left upon a highway unless such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in section 14-244 if any other traffic may be affected by such movement. (b) A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." (Subsequently amended by Public Acts 1963, No. 258.)

Section 14-244 (SIGNALS) sets forth how a signal should be given. "Sec. 14-246. RIGHT OF WAY AT INTERSECTION TURN. The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but such driver, having so yielded and having given a signal as required by section 14-242, may make such left turn and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn." (Subsequently amended by Public Acts, Spec. Sess., February, 1965, No. 448 § 26.)

forth in the footnote indicates that no exception to the signal requirement exists merely because there is no risk of collision in making the turn. To comply with the statute, a signal must be given to indicate any change of direction of a vehicle which may affect other traffic and, where that change of direction is to be a right or a left turn, a signal must be given continuously for at least the last 100 feet traveled by the vehicle before turning. General Statutes § 14-242 (a) and (b). Thus, the statute does not provide that a driver can wait until the moment he commences to make the turn before deciding whether or not to give an appropriate signal. Of course, to be of any value to those who might be affected by a left turn, the signal must precede the making of the turn itself. See *Andrew* v. *White Bus Line Corporation,* 115 Conn. 464, 468, 161 A. 792. The legislature has therefore enacted the statute which requires that the signal must be made continuously for at least 100 feet before the turn itself is commenced. The signal must be given before the turn can be made legally. See *Kronish* v. *Provasoli,* supra, 372; *Bartone* v. *Mahr,* 147 Conn. 187, 188, 158 A.2d 173. The requests, so far as they suggest exceptions to this requirement, are erroneous.

As authority for the portion of his request which states that the plaintiff was under no duty to signal and that Myers should have yielded the right of way to him when he perceived or should have perceived through a "Change of Direction or other significant indication" that the plaintiff intended to turn, the plaintiff cites *Barry* v. *Leiss,* 109 Conn. 484, 147 A. 18, and 1 Wright, Connecticut Jury Instructions, pp. 446, 447, which were based on what is now § 14-245 of the General Statutes. It must be remem-

bered that, when *Barry* v. *Leiss* was decided in 1929, there was no statute comparable to § 14-246. Since 1955 (Cum. Sup. 1955, § 1398d), a left turn at an intersection has been specifically dealt with by § 14-246. Statements from a decision dealing with the law applicable under an earlier statute were properly rejected by the court.

Error was not committed by the court in failing to grant the requests containing misstatements of the law. *Penna* v. *Esposito,* 154 Conn. 212, 214, 224 A.2d 536; *Bernard* v. *Ribner,* 151 Conn. 670, 673, 201 A.2d 658; *Crowder* v. *Zion Baptist Church, Inc.,* 143 Conn. 90, 100, 119 A.2d 736; see also Practice Book § 252.

The court, after reading the properly applicable statutes to the jury, adequately explained the rights and obligations of the parties under the statutes to the jury.

The plaintiff's final assignment of error relates to the refusal of the court to charge that even if Myers "had a statutory right of way, you are still free to find that he was negligent as to lookout, speed, and control in the use of the truck." An examination of the court's charge to the jury shows that the court clearly explained to the jury that they could find Myers negligent if they found he had failed to adhere to the constant duty of an operator of a motor vehicle to keep a proper lookout, to maintain proper control of the vehicle, and to operate the vehicle at a reasonable speed. The court properly explained the meaning of proper lookout, control and reasonable speed. We find nothing in the charge which could have led the jury to believe that these enumerated responsibilities ceased to apply simply because a driver approached an intersection with the statutory right of way. The

request, therefore, would have added nothing to the charge, and it was not error to refuse to give it.

There is no error.

In this opinion the other judges concurred.