Clarence W. Thomas *v.* Francis Commerford et al.

Town of Branford *v.* Clarence W. Thomas

House, C. J., Shapiro, Loiselle, MacDonald and Bogdanski, Js.

Argued November 5, 1974—decision released March 4, 1975

*Paul J. Falsey,* for the appellants-appellees (defendants) in the first case and the appellant-appellee (plaintiff) in the second case.

*David M. Reilly, Jr.,* for the appellee-appellant (plaintiff) in the first case and the appellee-appellant (defendant) in the second case.

BOGDANSKI, J. These two cases, arising out of the the same automobile accident, were consolidated for trial and have been, combined on appeal by stipulation of the parties. In the first case the plaintiff, Clarence Thomas, sought to recover damages for personal injuries and property loss allegedly caused by the negligence of the town of Branford and its employee, Francis Commerford. In the second case, the town of Branford sought to recover property damage allegedly caused by Thomas's negligence. The jury returned verdicts in favor of Thomas in both cases. The town of Branford moved to set aside the verdicts and for judgment in both cases in accordance with its motions for a directed verdict. Those motions were denied. From the denial of those motions the town of Branford and Commerford, hereinafter the defendants, have appealed to this court, and, from the judgment rendered, Thomas has filed a cross appeal.

The defendants have assigned error in the court's finding of facts, in the charge to the jury, in the taking of judicial notice and in the denial of their motions. In the cross appeal, error has been assigned in the court's refusal to grant motions for nonsuit and default, in the finding of facts, and in the court's conclusions.

The offers of proof disclose the following: On March 30, 1967, Thomas was operating his motor vehicle southerly on Cedar Street, a public highway in Branford. His intention was to make a left turn into the driveway of his home

located on the easterly side of Cedar Street. When about twenty-five feet north of his driveway he stopped his vehicle at the westerly curb. While so stopped he saw the Commerford vehicle about 350 feet to the south, headed northerly. Commerford testified that his speed was approximately twenty-five miles per hour. As Thomas proceeded to turn his vehicle left towards the driveway, the two vehicles collided in the northbound lane. The Commerford vehicle left twenty-eight feet of tire marks on the pavement.

At the close of evidence, Thomas requested that the court take judicial notice of a pamphlet published by the state of Connecticut entitled "Driver's Manual," dated May, 1972. A chart contained therein, incorporating a three-quarter second reaction time for the "average" driver, purported to show the braking and total stopping distance of motor vehicles at various speeds "under most favorable road conditions." Over the defendants' objection, the court took judicial notice of the chart and charged the jury that the "normal" total stopping distance of a vehicle traveling twenty miles per hour is forty-seven feet and that at thirty miles per hour, the stopping distance is eighty-eight feet. The court went on to say that the jury could consider those facts in connection with Commerford's testimony that he saw Thomas's vehicle ninety to one hundred feet away and that he was traveling twenty-five miles per hour.

"The true concept of what is judicially known is that it is something which is already in the court's possession or, at any rate, is so accessible that it is unnecessary and therefore time wasting to require evidence of it. *State* v. *Main,* 69 Conn. 123,

136, 37 A. 80. Judicial notice, therefore, in its appropriate field, meets the objective of establishing facts to which the offer of evidence would normally be directed. *De Luca* v. *Park Commissioners*, 94 Conn. 7, 10, 107 A. 611. The underlying theory is that proof by evidence concerning a proposition may be dispensed with where the court is justified . . . in declaring the truth of the proposition without requiring evidence from the party. 9 Wigmore, Evidence (3d Ed.) § 2565. . . . Matters which may properly be judicially noticed in this way are those which come to the knowledge of men generally in the course of the ordinary experience of life or those matters which are . . . capable of ready and unquestionable demonstration. *Roden* v. *Connecticut Co.*, 113 Conn. 408, 415, 155 A. 721." *State* v. *Tomanelli*, 153 Conn. 365, 368–69, 216 A.2d 625.

The chart in question purports to show the "average" stopping distance for an automobile under "favorable" road conditions. Some jurisdictions have extended judicial notice to such charts; see, e.g., *Autrey* v. *Swisher*, 155 F.2d 18, 22 (5th Cir.); *Winekoff* v. *Pospisil*, 384 Mich. 260, 269, 181 N.W.2d 897; *Blahnik* v. *Dax*, 22 Wis. 2d 67, 72, 125 N.W.2d 364; while others have refused; see, e.g., *Schutz* v. *Breeback*, 228 Md. 179, 183, 178 A.2d 889; *McCoy* v. *Gilbert*, 110 Ohio App. 453, 460–64, 169 N.E.2d 624; *Smith* v. *Hardy*, 228 S.C. 112, 123, 88 S.E.2d 865. See, generally, note, 84 A.L.R.2d 979;[1] 12 Blashfield, Automobile Law & Practice

---

[1] As pointed out in the concurring opinion, infra, 72, the annotation in 84 A.L.R.2d 979 states in § 2 as follows: "In the overwhelming majority of the cases . . . the courts have ruled in favor of taking judicial notice of reaction time and stopping distance." That editorial comment, however, refers to all forms of such judicial notice, including cases where courts have done no more than

(3d Ed.) § 436.5, p. 135 n.30. We believe that the better rule is to exclude charts of total braking distances for automobiles from the realm of that which is judicially known. There are many factors which affect the stopping distance of a motor vehicle including the reaction time among individual drivers, the weight of the vehicle, the type and condition of brakes, the force with which the brakes are applied, and the type and condition of the roadway surface. See *McDonald* v. *Mulvihill,* 84 N.J. Super. 382, 388, 202 A.2d 213. Those factors are all interrelated, and each is a variable in any given situation. Charts showing stopping distances are based on certain assumptions as to those variable factors, which cannot be said to be generally known in the "ordinary experience of life or . . . capable of ready and unquestionable demonstration." *State* v. *Tomanelli,* supra, 369.

The better practice is to have opinion testimony of an expert as to the speed of a motor vehicle based on skid marks and other physical facts proven on the trial of each particular case. See note, 29 A.L.R.3d 248, 252 § 2[b]; see also *Waldron* v. *Raccio,* 166 Conn. 608, 612, 353 A.2d 770; *Toomey* v. *Danaher,* 161 Conn. 204, 210, 286 A.2d 293. When a witness testifies, his testimony can be challenged and the trier can pass on his credibility and determine what weight should be given to the evidence. This is not true when a fact is established by judicial notice. The suggestion in *State*

note that "there must be some passage of time before the body can respond to the mind's perception of danger in the path of a moving vehicle." 84 A.L.R.2d 980 § 3[b]. An examination of the cases cited in that annotation, as supplemented, reveals that the courts are fairly evenly divided on the issue of whether judicial notice can be taken of precise stopping distances and reaction times as published in charts and pamphlets.

v. *Tomanelli,* supra, 369, that judicial notice is not conclusive of the fact noticed since contrary testimony is permitted, cannot apply here where the request for judicial notice came after the close of evidence, and the taking of judicial notice by the court was first indicated in the charge.

In *Muse* v. *Page,* 125 Conn. 219, 4 A.2d 329, this court refused to take judicial notice of the shortest distance within which a vehicle could be stopped. It is true that in *Muse,* this court did say, at page 225, in quoting from *McCombs* v. *Fellis,* 337 Mo. 491, 498, 85 S.W.2d 135: "While courts may not take judicial notice of the precise distance a given automobile may be stopped under given conditions, judicial notice has been taken of the limits within which a, stop could be effected." In the present case, however, the court took judicial notice of the average and not the range of stopping distances. The court advised the jury of the average stopping distances of motor vehicles as matters judicially noticed, and established as facts .the stopping distance of Commerford's vehicle at two speeds. It, therefore, placed the average stopping distances before the jury as a test for measuring Commerford's speed, his testimony and his credibility. In so doing, the trial court erred.

Since both cases must be remanded for new trials,.. a discussion of the second issue raised by the defendants is appropriate. In its charge to the jury the trial court read § 14-242 of the General Statutes and instructed them that if they should find that Thomas did not signal his turn into the private driveway for at least one hundred, feet prior to making the turn, then they must find that he was in violation of that statute, and that the violation

would constitute negligence per se. After exception was taken by Thomas, the court recalled the jury and charged that if they found that Thomas had stopped his vehicle at the westerly curb and that his turn into the driveway constituted a "new course of action," then Thomas "need not put on his light, because, of course, it would be physically impossible to put on your signal light if you are only going to travel five or ten or fifteen feet, and then make a left-hand turn . . . ."

Section 14-242 states that "(a) No person shall turn a vehicle . . . to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in section 14-244. (b) A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning. . . ."

The court's charge to the jury is tested by the claims of proof as they appear in the finding. *State* v. *Edwards,* 163 Conn. 527, 528, 316 A.2d 387; *Southington* v. *Francis,* 159 Conn. 64, 68, 266 A.2d 387. The claims of proof show that Commerford did not see Thomas's vehicle prior to the time it was stopped at the westerly curb of the road. Since there must be a causal relationship between the claimed wrongful conduct and the injury, any failure of Thomas to signal prior to the time he was seen by Commerford could not, as a matter of law, be said to be the proximate cause of the accident. See *Pinto* v. *Spigner,* 163 Conn. 191, 197, 302 A.2d 266; *McDonald* v. *Connecticut Co.,* 151 Conn.

14, 19, 193 A.2d 490. Any error in the charge relating to the signaling requirements imposed on Thomas by § 14-242 prior to the time he stopped at the curb would therefore be harmless. Error, however, was committed in that portion of the corrected charge which indicated that Thomas need not signal his intention to turn left after the time he came to a stop at the westerly curb. That is contrary to the clear and unambiguous language of the last sentence of subsection (a) of § 14-242. "The signal must be given before the turn can be made legally." *Marcio* v. *Helm's Express, Inc.,* 154 Conn. 615, 620, 228 A.2d 128.

On cross appeal, Thomas pursued the claim that the court erred in refusing to grant his motions for nonsuit and default. The denial of a motion for nonsuit or default is committed to the discretion of the trial court and is not a ground of appeal, nor is it assignable as error. See *Adamsen* v. *Adamsen,* 151 Conn. 172, 177, 195 A.2d 418; *Bradbury* v. *South Norwalk,* 80 Conn. 298, 299, 68 A. 321; *Dubuque* v. *Coman,* 64 Conn. 475, 481, 30 A. 777.

There is error in the first case, the judgment is set aside and the case is remanded for a new trial limited to the issue of liability. There is error in the second case, the judgment is set aside and the case is remanded for a new trial.

In this opinion SHAPIRO, LOISELLE and MAC-DONALD, Js., concurred.

HOUSE, C. J. (concurring in the result). I concur in the result because of the error in the portion of the charge concerning the necessity for the giving of a signal before turning. I do not, however, agree with the portion of the opinion which finds that the

court erred in taking judicial notice of the distance within which, under normal circumstances, an automobile can be stopped and charging the jury accordingly. As the majority opinion notes, this court, in *Muse* v. *Page,* 125 Conn. 219, 225, 4 A.2d 329, quoted with approval from *McCombs* v. *Fellis,* 337 Mo. 491, 498, 85 S.W.2d 135: "While courts may not take judicial notice of the precise distance a given automobile may be stopped under given conditions, judicial notice has been taken of the limits within which a stop could be effected." The trial court charged this principle almost verbatim taking judicial notice of normal reaction and braking times and telling the jury: "A court cannot take judicial knowledge of the precise distance in which a car may be stopped in a given situation, but judicial notice can be taken of the distance within which it can be stopped. You can't say that a car can be stopped exactly at 25 feet, but we can say that . . . [it] can be stopped within 50 feet."

The annotation in 84 A.L.R.2d 979, entitled "Judicial notice of drivers' reaction time and of stopping distance of motor vehicles traveling at various speeds," at page 980 reports that "[i]n the overwhelming majority of the cases where this problem has been presented, the courts have ruled in favor of taking judicial notice of reaction time and stopping distance." I see no good reason for our court to abandon its position of concurrence with the overwhelming majority of courts.