[Cite as *Russell v. Ohio Dept. of Transp.*, 2010-Ohio-6612.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

WILLIAM L. RUSSELL, et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF TRANSPORTATION

    Defendant
    Case No. 2008-07241

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff, William Russell,[1] brought this action against defendant, the Ohio Department of Transportation (ODOT), alleging negligence. Plaintiff, Deborah Russell, William's spouse, asserts a claim of loss of consortium. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} This case arises as a result of an accident that occurred at approximately 5:30 p.m. on Sunday, August 12, 2007, at the intersection of State Route (SR) 619 and Cleveland Avenue in Uniontown, Ohio. Cleveland Avenue was a four-lane road comprised of two northbound lanes and two southbound lanes with a dedicated left-turn lane in the center of the four lanes on the approach at either side of the intersection. The posted speed limit was 45 miles per hour (mph). SR 619 was a two-lane road comprised of an eastbound lane and a westbound lane with a dedicated left-turn lane

---

[1] References to "plaintiff" in this decision are to William Russell.

between the two lanes on the approach at either side of the intersection. The posted speed limit on SR 619 was 35 mph.

{¶ 3} Prior to the accident, Nicholas Kratsas, then an ODOT signal electrician, had been summoned to the area to inspect and repair a malfunctioning traffic signal on Cleveland Avenue at the north side of the intersection. Kratsas initially attempted to repair the signal from the control box located at the southeast corner of the intersection, but ultimately determined that the problem originated in the overhead wiring from which the signals were suspended.

{¶ 4} In order to accomplish the overhead repair, Kratsas parked his ODOT "bucket truck" in the left-turn lane on the north side of the intersection. After placing orange cones at each corner of the truck and activating the vehicle's flashing strobe lights, Kratsas entered the bucket and raised the boom upward to reach the wiring. While performing the repairs, both off-road at the control box and while in the bucket truck, Kratsas switched the signals to a default mode such that traffic on Cleveland Avenue was controlled by yellow flashing lights and traffic on SR 619 was controlled by red flashing lights. At some point after determining that the overhead wire repair was necessary, Kratsas telephoned Gary Zimmerman, another ODOT signal electrician, to man the control box while Kratsas worked from the truck. According to Kratsas, Zimmerman's presence allowed him to complete the wire repair without having to lower the boom, exit the bucket, and return to the control box each time that he needed to check whether his efforts had been successful. Kratsas stated that the overhead repair took approximately 30 minutes, which was typical for that type of work. During the time that Kratsas was working from the bucket truck, Kristy Junkins, who had been driving southbound on Cleveland Avenue in a 1991 Honda Accord, made a brief stop at a BP gas station that was located on the northeast corner of the intersection. Junkins testified that, in order to return to the southbound lanes upon exiting the station, she drove across the two northbound lanes of Cleveland Avenue, across the turn lane such that the ODOT truck was on her left, and then turned left into the southbound lane closest to the truck. Junkins related that she drove into the intersection at approximately 20 mph, and that she proceeded cautiously both because of the yellow flashing lights and due to the ODOT truck blocking her left-side view.

{¶ 5} At about the same time, plaintiff and a group of friends, all of whom were riding motorcycles, approached the intersection driving westbound on SR 619. The group was nearing the end of a "poker run," which included stops at various destinations for each one in the group to collect a playing card, and at the end of the run, whoever had the best hand won a sum of money that was then donated to a charity. Plaintiff and his nephew, David Dearborn, were riding at the head of the group. According to Dearborn, the group stopped and waited for approximately three minutes at the stop bar below the red flashing lights, then he and plaintiff proceeded into the intersection with plaintiff approximately "one half of a bike length" ahead.

{¶ 6} Junkins testified that she heard a motorcycle as she was crossing the intersection, that she caught a brief peripheral glimpse of one, and that she accelerated in attempt to avoid a collision. However, plaintiff's motorcycle struck the left rear wheel and bumper area of her vehicle. Neither Junkins nor her passenger were physically injured. Junkins was able to drive her vehicle out of the intersection and into a nearby parking lot. Plaintiff was thrown from his motorcycle and sustained severe head injuries. He has had no recall of the accident since the time of its occurrence. Dearborn carried plaintiff to the side of the roadway, and some of the other group members removed plaintiff's motorcycle from the intersection. Kratsas did not see either vehicle prior to the accident, nor did he witness the collision. Zimmerman arrived just after the accident had occurred.

{¶ 7} Kathleen Hinson, who testified by deposition, was the only other individual who witnessed the collision. Hinson was driving eastbound on SR 619 prior to the accident. She related that plaintiff and the other motorcyclists were already stopped on the opposite side of the intersection when she approached. She stopped her vehicle and waited for a driver in the northbound left-turn lane of Cleveland Avenue to turn west onto SR 619. According to Hinson, the person took an inordinate amount of time to complete the turn. Hinson testified that she then waited for the motorcyclists to proceed. At that point, Hinson looked to her left and saw Junkins' vehicle proceeding southbound at the same time that plaintiff was coming across the intersection. She testified that she was startled because it appeared to her that the vehicles were going to collide. Hinson recalled Junkins' vehicle proceeding from the right-most or "curb" lane

of Cleveland Avenue. She further stated that plaintiff's vehicle had passed the ODOT truck when the collision occurred, that plaintiff was in the area south of the lane closest to the ODOT truck and was beginning to move into the area south of the curb lane. Hinson testified that it did not appear to her that either driver was speeding or otherwise driving in a reckless manner.

{¶ 8} Plaintiffs allege that the ODOT truck obstructed the view of both westbound and southbound traffic and contend that ODOT was negligent in failing to provide a "flagger" to control traffic at the intersection rather than relying solely upon the flashing signals. Plaintiffs contend that Zimmerman could have been called to flag traffic rather than to man the control box, or that law enforcement personnel could have been summoned for the task. Plaintiffs further maintain that ODOT's District 4, where the accident occurred, was negligent in failing to establish procedures concerning signal-malfunction reports, particularly with respect to what type of traffic control is appropriate under various circumstances, and when to call for traffic control assistance.

{¶ 9} Defendant denies that it breached any duty of care owed to plaintiff and asserts that plaintiff's own negligence was the sole proximate cause of the accident. Alternatively, defendant contends that even if some breach of duty were established, plaintiff's negligence was greater than any negligence on the part of defendant.[2]

{¶ 10} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77.

{¶ 11} ODOT is subject to a general duty to exercise ordinary, reasonable care in maintaining state highways. *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 42. "The scope of ODOT's duty is more particularly defined by the Ohio Manual of Uniform Traffic Control Devices [OMUTCD], which mandates certain minimum safety measures."

---

[2]Defendant moved for dismissal of plaintiffs' claims, pursuant to Civ.R. 41(B)(2), at both the close of plaintiffs' case and at the conclusion of the proceedings. The court reserved ruling on those motions.

{¶ 12} *State Farm Automobile Insurance Co. v. Ohio Dept. of Transp.* (June 8, 1999), Franklin App. Nos. 98AP-936, 98AP-1028, 98AP-960, 98AP-1536, 98AP-976, 99AP-48. "[N]ot all portions of the manual are mandatory, thereby leaving some areas within the discretion and engineering judgment of [defendant.]" *Leskovac v. Ohio Dept. of Transp.* (1990), 71 Ohio App.3d 22, 27, citing *Perkins v. Ohio Dept. of Transp.* (1989), 65 Ohio App.3d 487, 491.

{¶ 13} In this case, it is undisputed that the OMUTCD imposed no mandatory duty upon ODOT to provide a traffic-control flagger for work such as that performed by Kratsas, which required less than one hour to complete. Rather, plaintiff relies upon the provisions of ODOT's Traffic Engineering Manual (TEM) and the testimony of Henry Lipian, an expert in transportation accident and incident reconstruction, to establish negligence.

{¶ 14} Specifically, Section 460-5 of the TEM, entitled "Malfunction Response" provides in pertinent part that:

{¶ 15} "[Each] District *shall* establish procedures for addressing malfunction responses. At a minimum these shall include:

{¶ 16} "1. If necessary, notify the [Ohio State Highway Patrol] or other appropriate law enforcement agencies, and ask for immediate assistance with traffic control until operation can be restored to a safe condition." (Emphasis added.)

{¶ 17} Plaintiff contends that ODOT's District 4 failed to comply with Section 460-5 in that it had no written malfunction response procedures. Plaintiff also takes issue with the fact that neither Kratsas nor Zimmerman was familiar with either the TEM or the requirements of Section 460-5. Lipian opined that "procedures" must be in writing if they are to be known and followed. He further opined that, despite the lack of a specific OMUTCD provision that would have mandated the use of a flagger under the circumstances, the OMUTCD does clearly advise that safety issues should not be compromised.

{¶ 18} With respect to reconstruction of the accident, Lipian noted that, because both Junkins' and plaintiff's vehicles were moved out of the intersection immediately after the collision, there was little physical evidence that he could refer to in rendering an opinion. He stated that he could determine only a general area of impact of the

vehicles based upon other evidence, including witness testimony. Lipian opined that both plaintiff and Junkins were traveling at low, safe rates of speed when they entered the intersection and that plaintiff had traveled approximately 60 feet from the stop bar on SR 619 when the collision occurred. It was his opinion that the ODOT truck created a significant sight obstruction for plaintiff, and that such obstruction was the primary cause of the accident. Lipian further testified that, as plaintiff got nearer to the truck in the intersection, he would have had to be looking to his "hard right" to see vehicles traveling southbound on Cleveland Avenue, an unsafe action that would have diverted his attention from the front and left of his vehicle where other traffic could be proceeding. He stated that, by the time that Junkins' vehicle became visible to plaintiff, both were at a point of "no escape" and the collision was inevitable. Lipian opined that the use of a flagger in the intersection, either Zimmerman or a local law enforcement officer, would have prevented the accident.

{¶ 19} Defendant argues that the TEM does not impose any mandatory duty upon ODOT inasmuch as it is an internal procedures manual, the violation of which does not constitute negligence. Further, defendant contends that, even if the TEM were to impose some legal duty owed to plaintiff, the evidence fails to establish that there was any violation of its provisions. Defendant also argued that the ODOT truck was conspicuously placed, that Kratsas used all appropriate warning signals to make its presence obvious, that it had to have been apparent that work was being performed on the traffic signals and, thus, that it was incumbent upon the motoring public to use extra caution in proceeding through the intersection. Defendant maintains that plaintiff failed to exercise due care under the circumstances.

{¶ 20} In addition to its other evidence, defendant presented the testimony of Kenneth Greene, the Traffic Maintenance Engineer for District 4, and the expert testimony of David Holstein, ODOT's Administrator of the Office of Traffic Engineering.

{¶ 21} Greene explained that, whereas the OMUTCD applies to all public agencies that work with traffic control devices, the TEM applies exclusively to ODOT. He described the TEM as a compendium of policies and procedures for engineering staff, rather than for the employees who perform ODOT's field labor. Greene testified that, as such, he was "not surprised" that Kratsas and Zimmerman were not familiar with

the TEM's provisions. Greene also stated that ODOT does have procedures for "addressing malfunction responses" as required under Section 460-5, however, but that such procedures are not in writing other than those contained in the OMUTCD. According to Greene, the unwritten procedures are well-known and signal technicians, such as Kratsas and Zimmerman, receive most of the training for their work "on the job," rather than from seminars or a study of manuals. Greene testified that District 4's procedures include responding to all reported malfunctions; having a program in place which requires a signal electrician to be on call, 24 hours a day, seven days a week, for emergency situations; completing repair logs; routinely reviewing repair logs; and using basic safety precautions while performing the work, such as wearing safety gear, placing cones or flares around the ODOT vehicles, and using the flashing strobe lights on the vehicles.

{¶ 22} Holstein testified that his office publishes both the OMUTCD and the TEM. According to Holstein, there are no provisions in either manual that would have required the use of a flagger or a call for law enforcement assistance under circumstances that existed on the date of plaintiff's accident. Holstein insisted that use of a flagger in such circumstances would not have been necessary or customary, and he stated emphatically that "it is just not done." He also testified that he would not have done anything differently than Kratsas did at the time. Holstein further offered that it is not uncommon for motorists to encounter road work and that extra caution is required in those circumstances.

{¶ 23} Upon review of all of the evidence presented, the court finds that plaintiff failed to prove any breach of duty owed to him with respect to ODOT's malfunction response procedures or the performance of such procedures on the date of the accident. Plaintiff has pointed to no authority for the proposition that the TEM imposes a mandatory duty upon ODOT to maintain written malfunction response procedures. Moreover, the evidence fails to establish that any of the procedures that did exist would require the use of a flagger for a signal repair that took less than one hour to complete. As noted by Greene, the plain language of Section 460-5 is discretionary in that it states that law enforcement personnel are to be called upon for traffic control assistance "if necessary." It is undisputed that both Kratsas and Zimmerman knew that they could

call for assistance if safety concerns existed. Both testified that they had performed "hundreds" of malfunction repairs during their employment with ODOT and that they had never, or only very rarely, called for traffic control assistance. Further, there was no evidence that the intersection involved was unusually dangerous in any way, or that circumstances were such at the time of the accident that assistance was necessary. To the contrary, the evidence established that it was the local police who reported the signal malfunction to ODOT, and they did not elect to remain on the scene to direct traffic until Kratsas arrived or while he was performing the repair work.

{¶ 24} Further, even if plaintiffs had established some breach of duty on the part of ODOT, the court finds that plaintiff's own negligence was the sole proximate cause of the accident. The court is not persuaded that the ODOT truck so obscured plaintiff's view of southbound traffic that the accident was unavoidable by the time Junkins' vehicle became visible to him. The testimony was consistent that plaintiff would have had a clear view of traffic proceeding southbound on Cleveland Avenue before any view of it would be blocked by the ODOT truck and that, had plaintiff looked to his right while sitting at the stop bar, he could have seen Junkins' vehicle leaving the BP station and returning to the southbound lanes. Further, based upon Hinson's candid, credible testimony as to where plaintiff was located in the intersection when he collided with Junkins, the court is convinced that plaintiff had sufficient, albeit limited, time and opportunity to avoid the accident if he had slowed or stopped after he passed the ODOT truck in order to assure that he could proceed safely. Although plaintiff could not recall his actions that day, the testimony is sufficient to establish that plaintiff simply drove straight through the intersection without looking for other traffic. It is well-settled that the common law of Ohio imposes a duty of reasonable care upon all motorists which includes the responsibility "to observe the environment in which they drive, not only in front of their vehicle, but to the sides and rear as the circumstances may warrant." *Hubner v. Sigall* (1988), 47 Ohio App.3d 15, 17, citing *State v. Ward* (1957), 105 Ohio App. 1; *Scott v. Marshall* (1951), 90 Ohio App. 347, 365. It is further well-settled that ODOT is not an insurer of safety for travelers on its highways. *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App.3d 723, 729.

{¶ 25} Accordingly, the court concludes that plaintiffs failed to prove their negligence claim by a preponderance of the evidence and,[3] therefore, the derivative claim for loss of consortium also must fail. See *Bowen v. Kil-Kare, Inc.* (1992), 63 Ohio St.3d 84, 93.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

WILLIAM L. RUSSELL, et al.

      Plaintiffs

      v.

OHIO DEPARTMENT OF TRANSPORTATION

      Defendant
      Case No. 2008-07241

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

---

[3]In light of this determination, defendant's Civ.R. 41(B)(2) motions to dismiss are DENIED.

_____
JOSEPH T. CLARK
Judge

cc:

John T. Scanlon
50 South Main Street, Suite 504
Akron, Ohio 44308

Velda K. Hofacker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

LH/cmd
Filed December 21, 2010
To S.C. reporter January 4, 2011